[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Dangler*, Slip Opinion No. 2020-Ohio-2765.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-2765

THE STATE OF OHIO, APPELLANT, *v*. DANGLER, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Dangler*, Slip Opinion No. 2020-Ohio-2765.]**

*Criminal law—Crim.R. 11(C)(2)(a)—A trial court must explain to a defendant the "maximum penalty involved" when accepting a plea of guilty or no contest—When a trial court explained to a defendant sex offender who entered a plea of guilty or no contest that he is subject to the sex-offender-registration scheme of R.C. Chapter 2950 as part of his penalty, the defendant is entitled to have his conviction vacated for lack of a more complete explanation only if he demonstrates prejudice.*

(No. 2017-1703—Submitted February 20, 2019—Decided May 5, 2020.)

CERTIFIED by the Court of Appeals for Williams County, No. WM-16-010, 2017-Ohio-7981.

_____

**DEWINE, J.**

{¶ 1} Brad Dangler pleaded no contest to sexual battery and then sought to vacate his plea on appeal. He contends that his plea was invalid because the trial court failed to comply fully with Crim.R. 11(C)(2)(a)'s requirement that the court explain the "maximum penalty" for the offense at the time it accepted the plea. Specifically, he maintains that even though the trial court told him that he would have to register as a Tier III sex offender for the rest of his life, it erred by not explaining more fully the obligations and restrictions that went with his status as a sex offender. He says this purported failure gives him an automatic right to withdraw his plea, without any need to demonstrate that he was prejudiced.

{¶ 2} We disagree. When a trial court has told a defendant that he is subject to the sex-offender-registration scheme, that defendant is entitled to have his conviction vacated for lack of a more complete explanation only if he demonstrates prejudice—that is, that he would not have entered the plea but for the incomplete explanation. Because Dangler has not demonstrated prejudice, he is not entitled to withdraw his plea.

### A Plea and an Appeal

{¶ 3} Dangler was indicted on one count of rape of a substantially impaired person in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree. He ultimately reached an agreement with the state to resolve the case with a plea and an agreed sentence. The state amended the count to sexual battery in violation of R.C. 2907.03(A)(2), a felony of the third degree, and Dangler entered a plea of no contest "with a consent to a finding of guilt." The parties jointly recommended a sentence of three years in prison, with the state indicating that it would not object to judicial release after Dangler had served two years and four months.

{¶ 4} Before accepting the plea, the trial court engaged Dangler in a plea colloquy. The court instructed Dangler at the outset, "If I ask you a question that you do not understand, please stop me and I will rephrase it." The court told

Dangler the maximum possible prison term and fine that could be imposed and further advised him, "You would also be obligated to register as a Tier III sex offender which means you would have an obligation to register for your lifetime." Dangler replied that he understood. After explaining the constitutional rights Dangler was waiving by entering a plea, the trial court accepted Dangler's plea and entered a finding of guilty.

{¶ 5} The trial court proceeded with sentencing a month later. At the hearing, the court designated Dangler a Tier III sex offender, detailed his obligations with respect to registration and in-person verification, and informed him of the possibility of criminal prosecution for noncompliance. Dangler clarified the date of his initial registration and indicated that he had no other questions about the terms of his sex-offender status. The court then imposed the agreed-upon 36-month prison term and a mandatory five-year period of postrelease control.

{¶ 6} Dangler appealed, raising two assignments of error. First, he sought to have his plea vacated on the grounds that the trial court had not complied with Crim.R. 11(C)(2)(a)'s requirement that the court inform him of the maximum penalty for his crime. That provision requires the court to determine "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." *Id.* Dangler asserted that in order to adequately inform him of the maximum penalty, the trial court was required to explain to him (1) the registration requirements that went with his classification (verifying his address in-person every 90 days for the rest of his life with the sheriff of any county in which he resides, works, or attends school), (2) the residency restrictions applicable to his classification, and (3) the community-notification process by which members of the public would be made aware of his status as a sex offender. He contended that because the court did not provide that information, his plea was not knowing and voluntary. Dangler also challenged the trial court's order

requiring him to pay appointed-counsel fees without a determination of his ability to pay.

{¶ 7} The state defended the plea, arguing that the trial court had substantially complied with Crim.R. 11(C)(2)(a) by informing Dangler that he would be classified as a Tier III sex offender and would be required to register for the rest of his life. The state further asserted that Dangler had not shown that he was prejudiced by any lack of notification by the trial court about other aspects of the sex-offender-classification scheme.

{¶ 8} Relying on this court's decision in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, the Sixth District Court of Appeals concluded that the registration and in-person verification requirements, community-notification provisions, and residency restrictions are punitive sanctions. Under the Sixth District's view, each of these requirements constitutes a separate penalty and therefore a trial court must go over each requirement in order to comply with Crim.R. 11(C)(2)(A)'s maximum-penalty advisement. Because the trial court did not review the community-notification provisions and the residency restrictions, the court of appeals concluded that the trial court had completely failed to comply with Crim.R. 11(C)(2)(a) and vacated Dangler's conviction and sentence without requiring him to show prejudice. The court determined that its resolution of the plea issue rendered the appointed-counsel-fee question moot.

{¶ 9} The Sixth District certified that its decision was in conflict with decisions from the Second District Court of Appeals in *State v. Young*, 2d Dist. Greene No. 2013-CA-22, 2014-Ohio-2213, and the Eighth District Court of Appeals in *State v. Creed*, 8th Dist. Cuyahoga No. 97317, 2012-Ohio-2627. We determined that a conflict exists and ordered briefing on the following question:

> During a plea hearing, does the failure of the sentencing court to inform a defendant of all of the penalties associated with a sex

offender classification imposed by R.C. Chapter 2950 constitute a complete failure to comply with Crim.R. 11 and render the plea void without the need to show prejudice resulted?

152 Ohio St.3d 1404, 2018-Ohio-723, 92 N.E.3d 876.

## Compliance with Crim.R. 11

{¶ 10} Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary. *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25; *see State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional. *Id*.

{¶ 11} Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas. We have explained that the rule "ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made." *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975); *see also State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990).

{¶ 12} Ever since the rule's adoption in 1973, we have been grappling with how best to review a trial court's colloquy to ensure that a defendant's plea is knowing and voluntary. *See State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). In keeping with that objective, our focus in reviewing pleas has not been on whether the trial judge has "[incanted] the precise verbiage" of the rule, *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977), but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea, *State v. Veney*, 120 Ohio St.3d 176, 2008-

Ohio-5200, 897 N.E.2d 621, ¶ 15-16; *Clark* at ¶ 26; *State v. Miller*, ___ Ohio St.3d ___, 2020-Ohio-1420, ___ N.E.3d ___, ¶ 19.

{¶ **13**} When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14-15; *Stewart* at 93; Crim.R. 52.

{¶ **14**} We have made a limited exception to the prejudice component of that rule in the criminal-plea context. When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required. *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 31; *Veney* at syllabus. We have identified these constitutional rights as those set forth in Crim.R. 11(C)(2)(c): the right to a jury trial, the right to confront one's accusers, the privilege against self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt. *Id.* at ¶ 19. But when a trial court fails to fully cover other "nonconstitutional" aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea. *Id.* at ¶ 17.

{¶ **15**} We have created one additional exception to the prejudice requirement: a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. In *Sarkozy*, we held that the trial court had completely failed to comply with Crim.R. 11(C)(2)(a)'s requirement that it explain the maximum penalty when the court made no mention of postrelease control in the plea colloquy, despite the fact the defendant was subject to a mandatory five years of postrelease control. *Id.*

{¶ 16} Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." *Id*.

{¶ 17} Unfortunately, our caselaw has muddled that analysis by suggesting different tiers of compliance with the rule. The court has, in some instances, said that "partial" compliance is sufficient absent a showing of prejudice from the failure to "substantially" comply, *see, e.g.*, *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. Elsewhere, the court has indicated that when a trial court has "substantially" complied, the defendant must show prejudice from the failure to "strictly" or "literally" adhere to the rule, *see, e.g.*, *Nero* at 107-108; *see also Stewart*, 51 Ohio St.2d at 93, 364 N.E.2d 1163. But those formulations have served only to unduly complicate what should be a fairly straightforward inquiry. Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

### The "Maximum Penalty"

{¶ 18} At issue here is compliance with Crim R. 11(C)(2)(a), which requires that the trial court determine that the defendant is "making the plea voluntarily, with understanding of * * * the maximum penalty involved." Thus, a threshold question is whether the classification of an offender as a sex offender and the various obligations that come with that classification are part of the "penalty" that is imposed on a defendant for his crime.

{¶ 19} In concluding that the sex-offender-registration scheme constitutes a penalty for the purposes of Crim.R. 11(C)(2)(a), the Sixth District relied upon our

decision in *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108. The question in *Williams* was whether Ohio's current sex-offender-registration scheme, R.C. Chapter 2950, could be applied retroactively without violating the prohibition on retroactive laws contained in Article II, Section 28 of the Ohio Constitution. That question turned, at least in part, on whether the statutory scheme should be considered remedial or punitive. The General Assembly has indicated that current R.C. Chapter 2950 is remedial, specifying the Chapter's purpose "to protect the safety and general welfare of the people of this state," R.C. 2950.02(B), by preventing sex offenders from "engaging in further sexually abusive behavior," R.C. 2950.02(A)(2). But notwithstanding the General Assembly's stated intent, this court concluded in *Williams* that changes made by 2007 Am.Sub.S.B. No. 10 ("S.B. 10"), Ohio's version of the federal Adam Walsh Act, rendered the statutory scheme "so punitive that its retroactive application is unconstitutional." *Id.* at ¶ 21.

{¶ 20} *Williams* did not address whether the sex-offender-registration scheme constitutes a penalty for purposes of Crim.R. 11. It did, however, hold that when the various parts of the scheme were considered together, there was enough of a punitive aspect that the scheme could not be applied retroactively. The state urges us to revisit *Williams*. But to do so would be beyond the scope of the certified question and is unnecessary for purposes of deciding this case. Instead, based on the rationale of *Williams*, we proceed with the assumption that the scheme as a whole constitutes a penalty for purposes of Crim.R. 11.

{¶ 21} The Sixth District held that it was not enough for the trial court to inform Dangler that he was subject to the sex-offender-registration scheme; the trial court was also required to separately go over the registration and in-person-verification requirements, community-notification provisions, and residency restrictions imposed by R.C. Chapter 2950. It concluded that because the trial court failed to do so, this case fell under the complete-noncompliance exception and that Dangler was therefore excused from establishing prejudice. This result is premised

on the Sixth District's understanding of each aspect of the sex-offender-classification scheme as a discrete criminal penalty.

{¶ 22} We disagree. Contrary to the view of the Sixth District, the *Williams* court did not decide that any specific element of the statutory scheme constitutes a criminal penalty. Rather, we explicitly stated that "[n]o one change compels our conclusion that S.B. 10 is punitive." *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, at ¶ 21. It was the changes to the statutes "in aggregate" that rendered the retroactive application of the statutory requirements punitive. *Id.* Thus, although R.C. Chapter 2950 contains a mixture of remedial and punitive elements, *id.* at ¶ 20, it was the statutory scheme as a whole that the court deemed to be punitive, *id.* at ¶ 16, 21. Because the trial court in this case advised Dangler that he would be subject to the registration requirements of that statutory scheme, the trial court did not completely fail to comply with Crim R. 11(C)(2)(a)'s maximum-penalty-advisement requirement.

### Dangler Cannot Demonstrate Prejudice

{¶ 23} The next question—must Dangler demonstrate prejudice?—is easily answered. The trial court did not completely fail to comply with Crim.R. 11(C)(2)(a)'s requirement that it explain the maximum penalty. And the maximum-penalty advisement is not a constitutional requirement. Consequently, neither of this court's exceptions to the prejudice requirement apply, and Dangler can prevail only by establishing that he would not have pleaded no contest but for the trial court's failure to explain the sex-offender-classification scheme more thoroughly.

{¶ 24} Both parties have addressed the prejudice issue in their briefs to this court, and we have the full record before us, so we may resolve that issue now. Prejudice must be established " 'on the face of the record.' " *Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26, quoting *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462, 709

N.E.2d 162 (1999). There is nothing in the record indicating that Dangler would not have entered his plea had he been more thoroughly informed of the details of the sex-offender-classification scheme. This is presumably why Dangler asks us to conclude that solely by virtue of challenging a plea on appeal, a defendant is "explicitly demonstrating" that his plea would not have otherwise been made. But that would be tantamount to eliminating the prejudice requirement altogether. Because Dangler has not established prejudice, he is not entitled to have his no-contest plea vacated for a failure to comply with Crim.R. 11(C).

**Conclusion**

{¶ 25} The trial court could have gone further than it did and reviewed with Dangler the entirety of his obligations and burdens under the sex-offender-classification scheme. And we encourage trial courts to be thorough in reviewing consequences of a defendant's decision to enter a plea, including those stemming from classification as a sex offender: the duty to register and provide in-person verification, the community-notification provisions, and the residency restrictions.

{¶ 26} But the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a), and there is nothing in the record to support a conclusion that Dangler would not have entered his plea had the trial court been more detailed in its explanation. We, therefore, reverse the judgment of the court of appeals on the certified-conflict issue, reinstate the trial court's acceptance of his plea, and remand this cause to the court of appeals to consider the assignment of error it found moot.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY and FRENCH, JJ., concur.

FISCHER, J., concurs in judgment only.

DONNELLY, J., concurs in part and dissents in part, with an opinion joined by STEWART, J.

––––––––––––––––––

**DONNELLY, J., concurring in part and dissenting in part.**

{¶ 27} At the time that appellee, Brad J. Dangler, filed the notice of his appeal to the Sixth District Court of Appeals, the consistent law of the Sixth District was to conclusively presume prejudice in the circumstances of cases like Dangler's. *See*, *e.g.*, *State v. McMahon*, 6th Dist. Sandusky No. S-14-036, 2015-Ohio-3300, ¶ 19. Dangler was not on notice of a need to assert that he was in fact prejudiced by the trial court's failure to inform him of the community-notification requirements, periodic in-person-verification requirements, or residency restrictions contained in the statutory scheme governing sex offenders, R.C. Chapter 2950. The only issue briefed in this court was the certified-conflict issue— whether prejudice must be presumed as a matter of law in all cases of this type. Now that we are resolving that issue in the negative and reversing the judgment below, we should be remanding this cause to the appellate court with instructions to allow the parties to brief the issue of prejudice in fact as to Dangler rather than sua sponte deciding the merits of the issue ourselves without giving the parties notice or an opportunity to respond.

{¶ 28} That being said, I agree as a general matter that reversal is appropriate in this case and that the certified-conflict question should be answered in the negative. A trial court's failure to explain any one detail among the specific registration requirements, community-notification provisions, address-verification requirements, and residential restrictions associated with sex-offender classification does not constitute a "complete failure" to comply with Crim.R. 11(C)(2)(a) as contemplated in *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. That line is an obvious one to draw. Beyond that basic notion, it is also important for both trial and appellate courts to bear in mind that sex-offender classification is unique among criminal penalties and is a relatively new addition as a category of criminal penalty.

{¶ 29} When a trial court imposes a prison term, the commonplace understanding of imprisonment obviates the court's need to explain its meaning in detail. But merely reciting the word "prison" does not technically explain the nature of the penalty or describe the aspects that a defendant might find to be particularly burdensome or punitive. The trial court need not explain that prison involves the basic loss of liberty through physical confinement in a facility, as well as the loss of privacy and personal physical integrity on a number of levels. *See*, *e.g.*, R.C. 5120.66 (an inmate's information is displayed on a publicly accessible internet database); R.C. 2301.57(E) (involuntary medical testing); Ohio Adm.Code 5120-9-17(B)(1) (incoming mail is opened and reviewed); Ohio Adm.Code 5120-9-25(I) (haircuts by physical force).

{¶ 30} Each way in which prison might curtail a defendant's liberty interests does not need to be explained in order to adequately notify a criminal defendant of the "maximum penalty involved" pursuant to Crim.R. 11(C)(2)(a). Instead, the penalty is prison, and the "maximum penalty" is the longest duration of time that the defendant might have to endure the penalty of prison. If the penalty aspects of sex-offender classification were as commonly understood as prison, then a trial court would simply need to identify the longest duration that a defendant would be subjected to the requirements of R.C. Chapter 2950. In other words, a defendant would need to be notified whether he or she would be subject to the statutory scheme for 15 years as a Tier I offender, 25 years as a Tier II offender, or for life as a Tier III offender. *See* R.C. 2950.07(B).

{¶ 31} But, of course, sex-offender classification is not as commonly understood as prison. By contrast, it is a relatively new concept. *See Smith v. Doe*, 538 U.S. 84, 97, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). Over time, we can expect that the requirements and consequences involved in sex-offender classification will eventually become common knowledge. Currently, though, identifying the duration of sex-offender classification alone would satisfy only the minimum that

would be needed to avoid a finding of complete noncompliance with Crim.R. 11(C)(2)(a). A more detailed explanation of certain aspects of sex-offender classification might be necessary in order for a defendant to truly understand the penalty involved. And any claim of prejudice on appeal deserves particularly careful and comprehensive consideration.

{¶ 32} The Sixth District has been correct in repeatedly emphasizing in its opinions that a trial court should be thorough in explaining the import of the new and still-evolving consequences of sex-offender classification. The best practices of a trial court would be to explain the registration requirements, community-notification requirements, address-verification details, and residential restrictions as described by the Sixth District in its opinion in this case and its opinions in other cases. In light of Crim.R. 11's purpose of ensuring an adequate record to review the voluntariness of a plea, *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990), an ideal colloquy on sex-offender classification would also be accompanied by a written sex-offender-registry notification form, signed by the defendant, with an integrated attestation of counsel that the defendant has been apprised of and understands the form's contents.

{¶ 33} Ohio's trial courts need guidance on best practices regarding sex offenders' pleas more than they need a re-explanation of basic concepts already established in *Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224. I do not see why this court continues to review cases contesting the validity of guilty and no-contest pleas when this court ends up merely repeating already-existing standards in narrower and narrower terms. We could keep on accepting these cases, or we could do something useful; we could use our power to promulgate rules of procedure that incorporate standardized guilty and no-contest plea forms for sex offenses.

{¶ 34} The advantage of using a standard sex-offense plea form is that the defendant would receive notice of all significant aspects of sex-offender

classification *before* the plea hearing even takes place, rather than receiving notice of registration requirements as an afterthought at the sentencing stage pursuant to R.C. 2950.03. Such a form would prompt a defendant to consider a wide range of variables and factors, and it would provide the opportunity for the defendant to pose informed questions to defense counsel and the trial court. Requiring an attestation of counsel on the plea form would ensure that defense counsel sits down with the defendant and reviews everything before the plea hearing. Using plea forms would also allow the plea hearing itself to be more efficient and focused. It would be possible to strive for uniformity even with the understanding that different trial judges in different courthouses throughout the state of Ohio have vastly different amounts of time that they can spend on these plea hearings.

{¶ 35} Standard plea forms for sex offenses—and for that matter, all categories of criminal offenses—would enhance the efficiency of the judicial process and, more importantly, would bring us closer to achieving the goal of protecting all criminal defendants' due-process rights. We should keep in mind that the defendants' due-process rights are paramount in the plea process. Rather than putting our energy into ensuring the narrowness of appellate review for criminal defendants, our goal should be to help Ohio's trial courts ensure that guilty and no-contest pleas are knowingly, voluntarily, and intelligently entered.

STEWART, J., concurs in the foregoing opinion.

_____

David T. Harold and Thomas A. Matuszak, Assistant Wood County Prosecuting Attorneys, as special prosecuting attorneys, for appellant.

Karin L. Coble, for appellee.

_____