[Cite as *State v. Meadows*, 2022-Ohio-4513.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                             :

    Plaintiff-Appellee,          :

                              No. 111489

    v.                                  :

STEPHEN MEADOWS,                           :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 15, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-667521-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Lisa J. Turoso, Assistant Prosecuting Attorney, *for appellant.*

The Law Office of Jaye M. Schlachet and Eric M. Levy, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant, Stephen Meadows, appeals from a judgment of the Cuyahoga County Court of Common Pleas that convicted him of attempted assault and related offenses after a guilty plea. On appeal, Meadows challenges the

validity of his guilty plea and argues the record does not support the consecutive sentences imposed by the trial court for his offenses. Having reviewed the record and applicable law, we find no merit to his appeal and affirm the trial court's judgment.

**Background**

{¶ 2} On January 31, 2022, police officers responded to a 911 call for domestic violence. When the officers arrived at the victim's residence, they saw blood on the door. The victim, who was in a long-term relationship with Meadows, told the officers that she was cut and strangled and that she had also been dragged down the hall and thrown into the toilet in the bathroom. The victim also related that, after the victim placed the 911 call, Meadows threatened that he would kill her if she did not cancel the call. Meadows was confrontational with the officers and struck one of them with his elbow. The victim's two children were present in the house during the incident.

{¶ 3} The incident led to an eight-count indictment against Meadows. He was charged with felonious assault (Count 1), a second-degree felony; domestic violence (Count 2), a fourth-degree felony; two counts of endangering children (Counts 3 and 4), a first-degree misdemeanor; intimidation of crime victim or witness (Count 5), a third-degree misdemeanor; criminal damaging or endangering (Count 6), a first-degree misdemeanor; assaulting a peace officer (Count 7), a fourth-degree felony; and resisting arrest (Count 8), a second-degree misdemeanor.

{¶ 4} Meadows pleaded guilty to Count 1, amended to attempted felonious assault, a third-degree felony; Count 5, amended to attempted intimidation of a crime victim or witness, a fourth-degree felony; and Count 7, amended to attempted assault of a peace officer, a fifth-degree felony. The remaining counts were dismissed.

{¶ 5} At the plea hearing, the trial court advised Meadows that amended Count 1 was a third-degree felony, punishable by a maximum of 36 months in prison, and amended Count 7 was a fifth-degree felony and punishable by a maximum of 12 months in prison. The trial court, however, mistakenly advised Meadows that the amended Count 5 was a third-degree felony, punishable by up to 36 months in prison, when in fact the amended Count 5 was a fourth-degree felony punishable by up to 18 months in prison.

{¶ 6} At the conclusion of the plea hearing, Meadows moved to reduce his bond. The victim spoke and opposed any reduction, stating that she was uncertain of the safety of her and her children if Meadows's bond was reduced; she felt that "it's a possibility that I can get my life taken." The state also opposed bond reduction, stating that Meadows had cut the victim with a knife on her neck and the victim had consistently expressed her fear of him. In addition, Meadows also sent her a letter from the jail and had his mother telephone her twice, in violation of the no-contact order. The trial court denied his motion to reduce the bond.

{¶ 7} At the sentencing hearing, the state played footage from the body cam of an officer who arrived at the victim's residence in response to her 911 call. While

the video was played, the state recounted what the police witnessed when they arrived: there was blood on the door; the victim's two children were in the home; and the victim reported that she was cut and strangulated and had also been dragged down the hall and thrown into the toilet in the bathroom. A victim's advocate also spoke on behalf of the victim, stressing that the victim was very afraid of Meadows and wanted him to serve time in prison. The advocate reported that Meadows constantly "put his hands" on the victim and abused the victim by strangulation; he had "choked her out" on multiple occasions and used strangulation "when he wants to shut her mouth." The advocate expressed her amazement that the victim had survived the long-term abuse.

{¶ 8} Meadows's counsel advocated for community-control sanctions for Meadows's offenses. He proposed a reintegration plan, which included substance abuse and mental health program for Meadows. Counsel acknowledged that Meadows, age 31, had a significant criminal history: there were four juvenile cases involving unauthorized use of motor vehicle and thefts and he had a prior domestic violence misdemeanor conviction in 2011. Counsel noted that Meadows experienced trauma in his childhood and had been diagnosed with depressive disorders and cannabis disorder. Meadows spoke on his own behalf, suggesting that the victim was known for cutting herself and she was partly to blame for sustaining the injury on her neck during the incident.

{¶ 9} Before sentencing Meadows, the court addressed him as follows:

[T]here's a history here that's repeating itself. So you had the domestic violence in 2011, and then there were additional reports in 2011. But it seems you have a tendency to put your hands on [] your intimate partner's neck, which is very troubling. You're minimizing.

[T]hat [body cam] video can be used in domestic violence training. And I say that because you exhibited characteristics of someone who abuses their intimate partner. It was very clear on that video; all the body language, the words that you were using, the disregard for the officers being there, watching her try to maneuver because she knows what your triggers are. She didn't want it to turn into something worse than it was. Watching your arms [go] up, she knew what that meant. She knew what that meant. She told the officers, I don't want him to get aggressive. She used her body as a shield in that video because she knows you. And I have no doubt that if you were reunited with her, that her life is at risk. That's what I took from the video.

{¶ 10} The trial court also stressed that the victim's children were also victims in this case because they witnessed the assault incident. The court found the victim to be at a very high risk of homicide and noted Meadows denied responsibility for the incident.

{¶ 11} Before pronouncing Meadows's sentences, the trial court stated that it had considered the record, the statements made at the sentencing hearing, the PSI, the reintegration plan proposed by Meadows's counsel, and the mitigation of penalty report.

{¶ 12} The court imposed 36 months of prison on amended Count 1 and, under the mistaken belief that the amended Count 5 was a third-degree felony, imposed 24 months on that count, and ordered the two prison terms to be served consecutively. The court also imposed a concurrent term of 12 months on the amended Count 7.

{¶ 13} For the consecutive sentences, the court made the statutory findings that consecutive sentences were necessary to punish the offender and to protect the public from future crime; that the sentences were not disproportionate to the seriousness of the conduct and the danger imposed by the defendant; and that two or more of the offenses were part of more than one course of conduct, and that the harm caused was so great or unusual that a single term will not adequately reflect the seriousness of the conduct.

{¶ 14} The sentencing transcript next reflects that, following a recess, the trial court announced that the parties were back on the record, stating that it was just brought to the court's attention that the court had erroneously sentenced Meadows on the amended Count 5, which was a fourth-degree felony instead of a third-degree felony. The court asked if the defense would require the statutory findings to be made again. The defense counsel agreed to proceed to resentencing of the amended Count 5 without the trial court remaking the findings.

{¶ 15} While Meadows claims on appeal that he "might have decided" to exercise his trial right if he had been properly advised of the maximum penalty for the amended Count 5, notably, neither he nor his counsel raised any issue regarding the validity of the plea. Rather, his counsel took the opportunity to ask the trial court to reconsider its sentence and again advocated for community-control sanctions, emphasizing that Meadows had not committed any offenses since 2011 and that the instant incident likely involved mutual combat. The trial court reiterated its grave concern for the victim's safety and the importance for the court to treat stranger

assault and assault of an intimate partner equally. The court sentenced Meadows to 18 months in prison for the amended Count 5 and ordered it to be served consecutively to amended Count 1, based on the findings it had made.

{¶ 16} On appeal, Meadows raises the following three assignments of error:

I. The trial court erred when it found appellant's plea was voluntary, knowing and intelligent and that he was aware of the maximum penalty that the court could impose where he was advised that he was pleading guilty to attempted count five, a felony of the third degree, with an advisement of the potential sanctions for a third-degree felony when [amended] count five was a felony of the fourth degree.

II. The trial court erred when it imposed consecutive sentences which are not supported by the record and are contrary to law.

III. The trial court erred when it imposed consecutive sentences as an impermissible sentence package.

**Guilty Plea**

{¶ 17} Under the first assignment of error, Meadows argues his plea was not voluntary, knowing, or intelligent because he was not properly advised of the maximum penalty for the amended Count 5.

{¶ 18} To ensure that a defendant enters a plea knowingly, voluntarily, and intelligently, a trial court must engage in colloquy with the defendant in accordance with Crim.R. 11(C). *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11(C)(2) requires that a trial court determine from a colloquy with the defendant whether the defendant understands (1) the nature of the charge and maximum penalty, (2) the effect of the guilty plea, and (3) the constitutional rights waived by a guilty plea. *State v. Brown*, 8th Dist. Cuyahoga No. 104095, 2017-Ohio-

184, ¶ 5, citing *State v. Veney*, 120 Ohio St. 3d 176, 2008-Ohio-5200, 897 N.E.2d 621.  The reviewing court conducts a de novo review to determine whether the trial court accepted a plea in compliance with Crim.R. 11(C).  *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26.

{¶ 19} As summarized by the court in *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, the questions to ask in reviewing the validity of a guilty plea are "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶ 20} When a trial court fails to explain the constitutional rights delineated in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required.  *Dangler* at ¶ 14, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 31.

{¶ 21} Where, however, the issue concerns a nonconstitutional requirement, such as whether the defendant understood the nature of the charges or the maximum penalties for the offenses, a defendant must affirmatively show prejudice to invalidate his plea. *Id.*  The test for prejudice is "'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474.

{¶ 22} Meadows claims the trial court failed to comply with Crim.R. 11(C)(2)(a), which requires that the trial court determine that the defendant is "making the plea voluntarily, with understanding of * * * the maximum penalty involved." The trial court here advised Meadows of the maximum penalty for the three counts he faced. It correctly advised him of the maximum penalty of the amended Count 1 and the amended Count 7 (36 months and 12 months respectively), but erroneously advised him that the maximum penalty for the amended Count 5 was 36 months, when it was in fact 24 months. Thus, the court failed to fully comply with Crim.R. 11(C)(2)(a), and, because this involves a nonconstitutional right, Meadows has the burden to demonstrate prejudice.

{¶ 23} Meadows makes no such showing on appeal, except for a conclusory statement in his brief that "[h]ad he been aware that the original charge was only a felony of the third-degree with the associated maximum sanction he might have been willing to take that risk and go to trial." In *Dangler*, the Supreme Court of Ohio affirmed that when a defendant claims that he would not have entered his plea but for the trial court's failure to fully comply with the requirement of the maximum penalty advisement, prejudice must be established on the face of the record. *Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, at ¶ 24, citing *Hayward v. Summa Heath Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243. Meadows's conclusory statement falls short of the required demonstration. He offers no explanation for his claim, and our review reflects nothing in the record indicating that Meadows would have opted for trial if he had

known he faced a maximum of 18 month instead of 24 months in the amended Count 5.  Tellingly, neither he nor his counsel objected or otherwise raised the issue when the trial court announced its error and provided an opportunity for his counsel to speak before resentencing him on the amended Count 5.  Having reviewed the record, we find the first assignment of error to be without merit.

**Consecutive Sentences**

{¶ 24} Under the second assignment of error, Meadows argues his consecutive sentences are not supported by the record and otherwise contrary to law.

{¶ 25} R.C. 2929.14(C)(4) requires a trial court to make three specific findings when imposing consecutive sentences:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 26} An appellate court reviews felony sentences under the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. Furthermore, R.C. 2953.08(G)(2) is the exclusive means for appellate review of consecutive sentences. *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169. Pursuant to R.C. 2953.08(G)(2), we may increase, reduce, or otherwise modify a sentence or vacate a sentence and remand for resentencing if we clearly and convincingly find that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4), or the sentence is otherwise contrary to law.

{¶ 27} A consecutive sentence may be challenged in two ways. The defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4); or, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 7.

{¶ 28} In making the consecutive findings, a trial court is not required to give reasons supporting its decision to impose consecutive sentences. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 27. Rather, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 29} The trial court here made the findings before imposing consecutive sentences on the amended Count 1 and the amended Count 5. For the first finding, the court stated that consecutive sentences were necessary to punish the offender and to protect the public from future crime. For the second finding, the court stated that the sentences were not disproportionate to the seriousness of the conduct and the danger imposed by the defendant. For the third finding, the court stated that two or more of the offenses were part of more than one course of conduct, and that the harm caused was so great or unusual that a single term will not adequately reflect the seriousness of the conduct.

{¶ 30} In arguing the record does not support the findings made by the trial court, Meadows essentially argues that his offense was based on the relationship between him and the victim and therefore he poses no threat to the public at large. These claims are consistently rejected by the court. *See*, *e.g.*, *State v. Williams*, 11th Dist. Geauga No. 2020-G-0258, 2021-Ohio-1254, ¶ 11 (rejecting appellant's claim that his relationship with the victim facilitated his offense and his conduct posed a threat only to the particular victim and not to the public at large); and *State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 75 (finding that although the record does not show that appellant was necessarily a danger to the entire public at large, she was a threat to the children in her care).

{¶ 31} At the sentencing hearing, the victim's advocate reported Meadows's chronic abuse of the victim by strangulation and expressed her amazement that the victim was able to survive the habitual abuse. The court specifically noted that

Meadows's assault offense was very serious and found the victim to be at a high risk of homicide by Meadows. The court also found it significant that Meadows had committed a similar offense previously, he committed the present offenses in the presence of two children, and he disregarded law enforcement responding to the victim's 911 call.

{¶ 32} When examining whether the record supports the trial court's findings, R.C. 2953.08(G)(2) is broadly worded to encompass all of the proceedings before the court, not just the sentencing, and support for consecutive findings may appear anywhere in the record and not just at the time the court imposes consecutive sentences. *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 22 (8th Dist.). Here, the record reflects that at the plea hearing, the victim expressed grave concerns for the safety of her and her children and the court denied Meadows's request to reduce the bond. The PSI indicated that Meadows used a kitchen knife to cut the victim's neck after she called 911 for help and threatened to harm her further if she did not cancel the emergency call. When the police officers arrived, Meadows forcibly placed himself between the victim and the officers to prevent her from being assisted by the officers and, at one point, struck a police officer with his elbow.

{¶ 33} In light of the foregoing, we clearly and convincingly find that the record supports the sentencing court's findings under R.C. 2929.14(C)(4). The second assignment is without merit.

**Sentencing Package**

{¶ 34} Under the third assignment of error, Meadows claims the trial court imposed consecutive sentences as an impermissible sentencing package. In Ohio, "sentencing packages, or the imposition of one blanket sentence for multiple offenses, are not permissible." *State v. Hedges*, 11th Dist. Lake No. 2019-L-135, 2020-Ohio-4528, citing *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 10. "The doctrine arises from the Federal Sentencing Guidelines, which require courts to consider 'many multicount and interrelated sentencing enhancements.'" *State v. Habbas*, 8th Dist. Cuyahoga No. 104532, 2017-Ohio-2653, ¶ 7, quoting *Saxon* at ¶ 7. Furthermore, "under the sentencing package doctrine, an error within the sentencing package as a whole, even if only on one of multiple offenses, may require modification or vacation of the entire sentencing package due to the interdependency of the sentences for each offense." *Id.*, citing *Saxon* at ¶ 6. In contrast, "Ohio's felony sentencing scheme is designed to focus the judge's attention on one offense at a time." *Id.*, citing *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 6.

{¶ 35} Here, the trial court originally sentenced Meadows to 30 months on the amended Count 1, 24 months on the amended Count 5, and 12 months on the amended Count 7, and then ordered Count 1 and the amended Count 5 to be served consecutively based on its statutory findings. Upon discovering its advisement error regarding the amended Count 5, the court sentenced him to 18 months on that count and again ordered the sentence to be served consecutively to the amended Count 1

based on the previously made findings. The record before us indicates the trial court properly sentenced Meadows on individual counts as required and made the proper findings for consecutive sentences. Meadows's claim that the trial court imposed consecutive sentence as an improper sentencing package is meritless. The third assignment of error is overruled.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., and
MARY J. BOYLE, J., CONCUR