[Cite as *State v. Niyonzima*, 2025-Ohio-1185.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                No. 114104

    v.                             :

FIDEL NIYONZIMA,                        :

    Defendant-Appellant.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 3, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681930-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Jillian J. Piteo, and Tyler Blair, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Fidel Niyonzima ("Niyonzima") appeals his judgment of conviction after pleading guilty to attempted rape and burglary. On appeal, Niyonzima argues that his plea was not knowingly, intelligently and

voluntarily made.  Upon review, we find no merit to his appeal and therefore affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} Niyonzima was indicted on June 12, 2023, on the following counts:

Count 1: rape in violation of R.C. 2907.02(A)(2), a felony of the first degree;

Count 2: attempted rape in violation of R.C. 2923.02/2907.02(A)(2), a felony of the second degree;

Counts 3-5: gross sexual imposition in violation of R.C. 2907.05(A)(1), felonies of the fourth degree;

Count 6: kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree;

Count 7: aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree;

Count 8: burglary in violation of R.C. 2911.12(A)(1).

{¶ 3} On April 10, 2024, Niyonzima pleaded guilty to Count 2, attempted rape, and Count 8, burglary.  He was sentenced to 8 to 12 years of incarceration on Count 2 and 6 years on Count 8, to be served consecutively, for a total of 14 to 18 years of incarceration.

{¶ 4} The charges stemmed from events that took place in November 2021. The victim, C.S., testified that she was home alone when an intruder broke into the house wearing a mask.  (Tr. 44.)  He sprayed her with pepper spray, struck her on the head, threw a blanket over her face, and then anally raped her.  (Tr. 44-45.)  C.S. went to the emergency room where a rape kit was collected. DNA test results from the rape kit were later matched to Niyonzima.  (Tr. 47-48.)

{¶ 5} Niyonzima moved to the United States from Africa in 2017. His first language is Swahili, but he does speak English. (Tr. 4.) English was one of the languages spoken in his home country, and he attended and completed high school in the United States. (Tr. 18.) Interpreters were present at every hearing throughout the case, including court interpreter, C.K., at the plea hearing and bond modification hearing. (Tr. 12-15.)

{¶ 6} Niyonzima raised the following assignments of error:

1. Appellant's plea was not knowingly, intelligently or voluntarily made, because the court failed to secure his full and complete understanding of the proceedings as conducted through an interpreter, violating his right to due process under the fifth and fourteenth amendments to the U.S. Constitution and Article I Section 16 of the Constitution of the State of Ohio.

2. Appellant's plea was not knowingly, intelligently or voluntarily made, because the court failed to properly advise him of his mandatory duties to register as a sex offender, violating his right to due process under the fifth and fourteenth amendments to the U.S. Constitution and Article I Section 16 of the Constitution of the State of Ohio.

## II. Law and Analysis

{¶ 7} In both assignments of error, Niyonzima argues his plea was not knowingly, intelligently, or voluntarily made under Crim.R. 11(C).

{¶ 8} "To ensure that a defendant enters a plea knowingly, voluntarily, and intelligently, a trial court must engage in colloquy with the defendant in accordance with Crim.R. 11(C)." *State v. Meadows*, 2022-Ohio-4513, ¶ 18 (8th Dist.), citing *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11(C)(2) requires that during the plea colloquy, the trial court does the following:

(a) Determin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) [Inform] the defendant of and determin[e] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgement and sentence.

(c) [Inform] the defendant and determin[e] that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 9} Appellate review of compliance with Crim.R. 11(C) is de novo and considers the totality of the circumstances to determine whether the plea hearing followed the rule. *State v. Foster*, 2024-Ohio-5919, ¶ 8 (8th Dist.), citing *State v. Cardwell*, 2009-Ohio-6827, ¶ 26 (8th Dist.).

{¶ 10} The appellate court reviews the following:

"(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice?  and (3) if a showing of prejudice is required, has the defendant met that burden?"

*State v. Ponomarenko*, 2024-Ohio-4789, ¶ 15 (8th Dist.), quoting *State v. Dangler*, 2020-Ohio-2765, ¶ 17.

{¶ 11} The focus on review is "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea."  *Dangler* at ¶ 12 citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16; *State v.*

*Clark*, 2008-Ohio-3748, ¶ 26; and *State v. Miller*, 2020-Ohio-1420, ¶ 19. A criminal defendant asking an appellate court to reverse a conviction must show that an error occurred in the trial court proceedings and that he was prejudiced by that error. *Dangler* at ¶ 13; *see State v. Perry*, 2004-Ohio-297, ¶ 14-15; *State v. Stewart*, 51 Ohio St.2d 86, 92 (1977); Crim.R. 52.

{¶ 12} There are two exceptions to this rule. The first exception is when a trial court fails to explain constitutional rights that a defendant waives by entering a guilty plea, there is a presumption that the plea was entered involuntarily and unknowingly, and a showing of prejudice is not required. *Dangler* at ¶14, citing *Clark* at ¶ 31. The second exception is a trial court's complete failure to comply with a portion of Crim.R. 11(C), in which case the defendant is not required to show prejudice. *Dangler* at ¶ 15; *State v. Sarkozy*, 2008-Ohio-509, ¶ 22.

## A. First Assignment of Error — The Interpreter

{¶ 13} In his first assignment of error, Niyonzima argues he did not enter his guilty plea knowingly, intelligently, or voluntarily because he was not provided competent interpretation during the plea hearing and did not understand what he was pleading to. Specifically, he argues that the interpreter's oath at the plea hearing was not put on the record and, thus, we do not know that it was adequate; the interpreter did not hear or understand everything during the plea; Niyonzima did not know what probation meant; and Niyonzima was uncertain if counsel had informed him of the possibility of deportation.

{¶ 14} R.C. 2311.14(B) requires:

Before entering upon official duties, the interpreter shall take an oath that the interpreter will make a true interpretation of the proceedings to the party or witness, and that the interpreter will truly repeat the statements made by such party or witness to the court, to the best of the interpreter's ability.

{¶ 15} Niyonzima first argues that the oath administered to the interpreter at the start of the plea hearing is not reflected in the record and, thus, we do not know if it was legally sufficient. The record reflects that C.K. first provided interpretation services for Niyonzima at a bond modification hearing on October 23, 2023. The full oath was put on the record at that time and was as follows:

Do you solemnly swear or affirm you'll interpret accurately, completely and impartially using your best skill and judgment in accordance with the standards prescribed by law and follow all official guidelines established by this Court for legal interpreting or translating and discharge all the solemn duties and obligations of legal interpretation and translation?

(Tr. 4-5.)

{¶ 16} C.K. next provided interpretation services at Niyonzima's plea hearing on April 10, 2024. The transcript reflects only that an oath was again given to C.K., specifically showing the following:

THE COURT: I'll administer the oath.

. . .

(Thereupon, the interpreter was sworn.)

. . .

THE COURT: Thank you, sir.

(Tr. 11-12.)

{¶ 17} This court has previously held that a defendant is not permitted to raise the issue of a failure to administer an oath to an interpreter or that an oath was defective for the first time on appeal. *State v. Rosa*, 47 Ohio App.3d 172, 174 (8th Dist. 1988), citing *Stores Realty Co. v. Cleveland,* 41 Ohio St.2d 41, 43 (1975).

{¶ 18} Niyonzima claims that because the precise oath is not reflected in the record, we do not know if it is legally sufficient. However, we know from the record that an oath was administered to the interpreter at the start of the plea hearing. We also know that Niyonzima's counsel was present and would have heard the oath as it was administered and did not object. We note that Niyonzima does not point to any law requiring that the oath be indicated on the record verbatim. There is also nothing in the record to show that the oath was different from the oath that was given to the same interpreter at the bond hearing, and Niyonzima has not objected to the oath or the interpretation services provided at the bond hearing.

{¶ 19} Niyonzima also argues that because the interpreter asked the prosecutor twice to repeat what was said, the interpreter did not hear or did not understand what was being said. The first time the interpreter asked the prosecutor to repeat himself was as the prosecutor was outlining the plea agreement. The exchange was as follows:

[PROSECUTOR]: Yes, Your Honor.

As I understand it, discovery has been provided to defense counsel and this matter was fully pretried.

It's the State's understanding that the defendant will withdraw his previously entered not guilty plea, and he will enter a plea of guilty to an amended indictment.

The State will move to amend Count 2 in the indictment to add the attempt statute so that reads attempted rape, a felony of the second degree, in violation of Revised Code 2923.02 and 2909.02(A)(2).

[INTERPRETER]: May Counsel repeat that?

(Tr. 12.)

{¶ 20} The second time the interpreter asked the prosecutor to repeat himself went as follows:

[PROSECUTOR]: Yes, correct. The additional plea conditions are there is an agreed no contact with the victim. And it is agreed that the offenses are not allied offenses of similar import.

[INTERPRETER]: Your Honor, can the interpreter —

THE COURT: Yes.

[INTERPRETER]: — ask Counsel to repeat it?

[PROSECUTOR]: You want me to say that again?

[INTERPRETER]: Yes, can you repeat that?

(Tr. 14.)

{¶ 21} Niyonzima has not cited to any law to support his argument. He also did not object at the time of the hearing. This part of the plea hearing, with the bulk of the technical language and mass of information, is the only time the interpreter asks anyone to repeat themselves. There is no indication that C.K. did not understand what was being said or that C.K. did not provide accurate, complete and impartial interpretation of the plea hearing.

{¶ 22} Niyonzima next argues that he himself did not understand what was being said. He argues that he did not understand what probation meant during the

plea hearing, so he did not understand what was being said. The record reflects the following dialogue:

> THE COURT: Are you currently on probation, parole, or post-release control, or have any other unresolved arrests?
>
> THE DEFENDANT: Probation means?
>
> THE COURT: Do you have any other case where you are convicted, and you are being supervised by the Court on probation?
>
> THE DEFENDANT: No.

{¶ 23} Niyonzima attempts to confuse the issue by seemingly arguing that he did not understand what probation meant in terms of the possibility of probation as part of a sentence. However, he requested clarification when the trial court asked if he was on probation. (Tr. 18.) He also answered that he was not on probation, meaning he understood the question. If anything, his question shows that he was willing and able to express when he did not understand. The purpose of a plea colloquy is to demonstrate the defendant understands the consequences of his plea and typically involves a dialogue whereby the trial court is answering the defendant's questions. Niyonzima fails to explain how his plea colloquy is different from a plea colloquy involving a native English-speaking defendant.

{¶ 24} Lastly, Niyonzima argues that he was uncertain if counsel had advised him of the possibility of deportation. The record reflects the following:

> THE COURT: Are you a United States citizen?
>
> THE DEFENDANT: No.
>
> THE COURT: If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading

guilty to may have consequences of deportation, exclusion from admission to the United States — go ahead.

So, the consequences of your plea here will be deportation, exclusion from admission to the United States, or denial of naturalization.

Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with the representation that you have received from your attorney?

THE DEFENDANT: Yes.

THE COURT: Have you been advised by an immigration attorney about your plea here today?

THE DEFENDANT: I'm not sure.

[DEFENSE COUNSEL]: If I could speak on that, Your Honor, because we actually got three different opinions. There is an immigration attorney that had been working with my client that I had reached out to. He gave me an opinion in an email about the situation, and I did discuss that with my client. The prosecutor also got an opinion from an attorney that works with ICE, works with Immigration currently about the effects of a plea with regard to his status. Neither one can give a specific answer as to what the consequence would be, but did give us the range of consequences that he may be facing.

So, I do feel confident that I explained to my client both the worst case scenario for him, and the best case scenario for him regarding this plea.

THE COURT: Can you state the name of the attorney for the record[?]

[DEFENSE COUNSEL]: Yes. The attorney that the prosecutor consulted was James Rice. And the person that I consulted with was Brian Hoffman, but not the Public Defender.

Let me, Your Honor, if you could give me a minute, I could pull up the agency that he works with. Brian Hoffman is the Executive Director of the Ohio Center for Strategic Immigration Litigation and Outreach. He is an attorney and the executive director of that organization.

THE COURT: And you understood everything that your attorney has said and do you agree with that?

THE DEFENDANT: Yes.

(Tr. 19-21.)

{¶ 25} The trial court advised Niyonzima that deportation was a possible consequence of entering a guilty plea. The trial court also asked him if he understood everything his attorney said about the possibility of deportation, and Niyonzima responded "yes." (Tr. 21.) Again, the purpose of the plea colloquy is to explain to the defendant the consequences of their plea and answer any questions. Niyonzima fails to explain how his plea colloquy exchange is different from a plea hearing with a native English-speaking defendant.

{¶ 26} Nothing in the record indicates that the trial court did not engage in a plea colloquy demonstrating that the defendant understood the consequences of his plea. We find no error with the oath administered to the interpreter or the interpretation services provided to Niyonzima during his plea hearing and, thus, find that his guilty plea was entered knowingly, intelligently, and voluntarily. Niyonzima's first assignment of error is overruled.

**B. Second Assignment of Error — Sex Offender Registration**

{¶ 27} In his second assignment of error , Niyonzima argues that he did not enter his guilty plea knowingly, intelligently, or voluntarily because the trial court said there was "*a* chance" he would have to register as a sex offender, but he definitely has to register. (Emphasis added.) Niyonzima further argues that he was

essentially told he *might* have to register, and thus could not make a knowing, voluntary, and intelligent plea. We disagree with Niyonzima's argument.

{¶ 28} The record reflects the following discussion of sex offender registration at the plea hearing:

> THE COURT: What tier is the attempted rape as a sex offense?
>
> [PROSECUTOR]: I am looking into that right now.
>
> [DEFENSE COUNSEL]: I believe it's a II or a III, actually. And Your Honor, that's what I did advise my client.
>
> THE COURT: Yes, it is a Tier III.
>
> . . .
>
> [DEFENSE COUNSEL]: It is, Your Honor.
>
> Further, that's the plea agreement that I went over with my client. I went over all of the discovery in this case with my client, with an interpreter. And I went over the rights that he will be giving up by entering such a plea.
>
> . . .
>
> And the fact that Count 2 would subject him to sexual registration Tier III, and all that that entails.
>
> I do believe that I explained it to the point that he understood all of those rights, all of the potential consequences, and that this will be a knowing, voluntary and intelligent plea.

(Tr. 15-16.)

> THE COURT: There is also *the chance* that you will be required to register your address, where you work, where you go to school in this county, or in any other county, or in any other state you'll have to do that and verify those addresses every 90 days, for life.
>
> It also will restrict you from living within 1,000 feet of a school, or a preschool, or daycare that has a visible sign.

Violation of those requirements to register that information and not reside near a daycare could result in a felony conviction and prison time.

Do you understand all of that?

THE DEFENDANT: Yes.

(Tr. 27-28.)

{¶ 29} Crim.R. 11(C)(2)(a) "requires the trial court ensure the sex offender understands the requirements before it can accept a guilty plea." *State v. Wright*, 2023-Ohio-2134, ¶ 25 (10th Dist.).

{¶ 30} Niyonzima argues the trial court stated there was "a" chance he would have to register, making it seem optional. What the trial court actually stated was there was "the" chance he would have to register.

{¶ 31} The records reveals there was discussion during the plea hearing that Niyonzima would be subject to Tier III registration duties. His attorney indicated that he went over Tier III registration with Niyonzima and "all that that entails." (Tr. 16.) The court reviewed Tier III sexual offender requirements with Niyonzima, including how often he would have to register, what addresses he would have to register, and that the registration would be for life. He also indicated that failure to follow the requirements could result in criminal prosecution. Niyonzima answered in the affirmative when asked if he understood the sexual offender registration requirement section of the plea colloquy .

{¶ 32} Although the trial court stated there was "the" chance that Niyonzima would have to register as a sexual offender, the trial court complied with the relevant

provision of Crim.R. 11(C).  Under *Dangler*, 2020-Ohio-2765, no further inquiry is necessary.  Thus, Niyonzima's second assignment of error is overruled.

### III. Conclusion

{¶ 33} We find that Niyonzima's guilty plea was knowingly, intelligently and voluntarily made.  Therefore, we find no merit to his appeal and affirm the judgment of the trial court.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

LISA B. FORBES, P.J., and
MARY J. BOYLE, J., CONCUR