[Cite as *State v. Grossman*, 2024-Ohio-2363.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,              :

                              No. 113252

    v.                                          :

ANDREW GROSSMAN,                          :

    Defendant-Appellant.          :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 20, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-670789-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Frank Romeo Zeleznikar and Megan
Helton, Assistant Prosecuting Attorneys, *for appellee*.

Laurence Turbow, *for appellant*.

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Andrew Grossman ("Grossman") appeals from his guilty plea and conviction for gross sexual imposition and sexual battery,

contending that his guilty plea was not entered knowingly, intelligently, or voluntarily. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On May 24, 2022, in Cuyahoga C.P. No. CR-22-670789, a Cuyahoga County Grand Jury indicted Grossman on seven counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), and one count of rape in violation of R.C. 2907.02(A)(1)(b). The charges related to alleged sexual conduct on or about March 28, 2016, through March 28, 2020, between Grossman and J.S. (d.o.b. 3/28/2008). The grand jury also indicted Grossman on one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) against A.G. (d.o.b. 4/8/2003) for events that allegedly occurred on or about January 1, 2010, through December 31, 2010. All counts carried a sexually violent predator specification. On June 10, 2022, Grossman pleaded not guilty to the indictment.

{¶ 3} On November 16, 2022, at the request of defense counsel, Grossman was referred to the Court Psychiatric Clinic to determine Grossman's competence to stand trial and his eligibility for transfer to the mental health court. Dr. Aronoff conducted two assessments and referred Grossman for a neuropsychological evaluation by Dr. Swales. Dr. Swales found Grossman was "likely feigning or exaggerating memory impairment," did "not currently meet criteria for either any mild, or major, neurocognitive disorder," and did not "have genuine memory impairments." Dr. Aronoff's December 29, 2022 report noted deficits in Grossman's knowledge of the judicial process and inconsistencies in his knowledge of the judicial

process but the knowledge deficits were suspect. Because Dr. Aronoff's was unable to determine, with reasonable psychological certainty, whether Grossman understood the nature and objective of the legal proceedings and could assist in his defense, he suggested Grossman participate in a 20-day inpatient competency evaluation or a second competency evaluation by another examiner.

{¶ 4} On February 23, 2023, defense counsel sought a second psychiatric opinion, and on May 2, 2023, the parties stipulated to Dr. Benjamin Miller's April 24, 2023 competency evaluation that purportedly stated Dr. Miller found Grossman competent to assist in his defense and to understand the nature and objective of the proceedings against him. (Tr. 76-77.) Dr. Miller's report is not a part of the record.[1]

{¶ 5} On July 17, 2023, the trial court conducted a plea hearing. The trial court initially recited the offenses and associated code sections charged in the indictment. The assistant prosecuting attorney stated the plea agreement on the record. Grossman agreed to plead guilty to amended Counts 1 and 9, gross sexual

---

[1] On January 25, 2024, the State filed a motion with this court to supplement the record and make the psychiatric reports of Drs. Aronoff and Miller part of the appellate record. This court granted the motion to supplement the record and ordered the supplemental record due by January 29, 2024. On January 25, 2024, this court issued a sua sponte journal entry stating Dr. Aronoff's report was part of the appellate record but the clerk's office and trial court were unable to locate a copy of Dr. Miller's report. Defense counsel was ordered to obtain a copy of Dr. Miller's report and file it, by February 9, 2024, under seal with the court of appeals along with a joint stipulation between the parties as to the validity of the document. As of the release of this opinion, Dr. Miller's report has not been made a part of the appellate record. We note that Dr. Miller's report is not dispositive of the issues raised on appeal.

imposition in violation of R.C. 2907.05(A)(4), and amended Count 8, sexual battery in violation of R.C. 2907.03(A)(5). The State nolled the sexually violent predator specifications and all remaining counts. Grossman agreed Counts 1, 8, and 9 were non-allied offenses and that he would be classified as a Tier III sexual offender.

{¶ 6} The trial court conducted a Crim.R. 11 plea colloquy during which Grossman denied being under the influence of drugs or alcohol; he was uncertain whether any of his medications might adversely impact his ability to understand the proceedings:

> THE COURT: Are you currently under the influence of any drugs, alcohol, or medication that would adversely affect your ability to understand what is happening or to enter into a plea?
>
> THE DEFENDANT: Well, no drugs or alcohol. I don't know about my medication, your Honor.
>
> THE COURT: Do you understand what I'm saying so far?
>
> THE DEFENDANT: I'm not too sure about the medication part.
>
> THE COURT: Do you understand what is going on today?
>
> THE DEFENDANT: I guess, yeah.
>
> THE COURT: Are you able to understand when you're talking to your attorney?
>
> THE DEFENDANT: Sure.
>
> THE COURT: Do you, in fact, understand what is happening today?
>
> THE DEFENDANT: Yes, I think so.

Tr. 25-26.

{¶ 7} Grossman denied any threats or promises were made to induce his plea and indicated his "supposed" satisfaction with his attorney. The trial court explained Grossman's constitutional rights, and Grossman acknowledged that he gave up those rights by entering a guilty plea. Grossman acknowledged, after an explanation by the trial court, that he understood the court could proceed to sentencing immediately after he entered his plea.

{¶ 8} The trial court explained the possible maximum penalties associated with Counts 1 and 9, gross sexual imposition, were one-to-five-year prison sentences and maximum fines of $10,000 for each count. The court stated Count 8, sexual battery, carried a possible penalty of two to eight years in prison with a maximum fine of $15,000 and an indefinite sentence, pursuant to the Reagan Tokes Law, of two to 12 years. After the trial court twice explained the Reagan Tokes Law, Grossman stated he thought he understood the impact of an indefinite sentence.

{¶ 9} Grossman indicated he was not previously aware of the maximum penalties, but he understood following the trial court's explanation:

> THE COURT: Because these are multiple counts, I could run them one after the other. If I were to do that, you're looking at anywhere from two years in prison up to 18 years in prison of a definite term and an indefinite term of an additional four years, which would mean up to a max of 22 years in prison and a fine of up to $35,000. Do you understand?
>
> THE DEFENDANT: I do now. Nobody explained that to me before.
>
> THE COURT: That's fine. That's why I'm telling you now just so you have an understanding.

Tr. 32-33. The trial court advised Grossman on mandatory postrelease control and registration as a Tier III sex offender.

{¶ 10} The trial court asked Grossman if any threats or promises were made other than those stated in open court, and Grossman replied:

> THE DEFENDANT: The only thing I was told was that I might get two years in prison. That's all I remember.
>
> THE COURT: Do you understand that there is no promise of a particular sentence?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you understand that there is no — are saying you do understand or you don't understand?
>
> THE DEFENDANT: I don't.
>
> THE COURT: Okay. What that means to you is, for example, you just stated that you were told by your [c]ounsel I'm assuming that you would get two years of prison perhaps. As you heard me tell you earlier that these crimes, you could get up to 22 years in prison.
>
> THE DEFENDANT: I didn't know that.
>
> THE COURT: What I am saying to you — I don't know what you're going to get because we're going to send you to probation, and get a pre-sentence investigation report, and I am going to really understand what is going on. I'm going to listen to the victims talk. I'm going to listen to you talk, your counsel.
>
> But I want you to understand today that there is no promise of a particular sentence. Could be probation. Could be two years. It could be 20 years.[2] There's no promise. Do you understand now?

---

[2] The trial court incorrectly stated the sentence could be 20 years rather than 22 years.

THE DEFENDANT: Yes.

Tr. 38-39.

{¶ 11} The trial court's statement that Grossman could be sentenced to probation was incorrect because Count 8 carried a mandatory two-year sentence. The assistant prosecuting attorney immediately informed the trial court of the error, and the trial court had the following exchange with Grossman and defense counsel:

> ASSISTANT PROSECUTING ATTORNEY: Judge, just in regard to [C]ount 8, the felony of the second degree, sexual battery, it is mandatory he goes to prison for that count, so I want to make sure that is on the record.
>
> THE COURT: I didn't know that. Thank you very much. Count 8 is mandatory time. Take off the table what I said about probation. You cannot get probation. You will go to prison. Do you understand?
>
> THE DEFENDANT: No.
>
> DEFENSE COUNSEL: Your Honor, just for clarity purposes, I did explain to Mr. Grossman last week. I know he came to my office with his wife and we spoke for quite some time. He does have some memory issues.
>
> THE COURT: Okay.
>
> DEFENSE COUNSEL: I did indicate to him that the mandatory minimum would be two years and I did indicate that as the Court stated there is no guaranteed set sentence. It could be two. It could be much more. That's what he and I discussed.
>
> THE COURT: Anything further on behalf of the State of Ohio regarding complying with Rule 11?
>
> ASSISTANT PROSECUTING ATTORNEY: No, Judge. Thank you.
>
> THE COURT: On behalf of the Defense, have I complied with the requirements of Criminal Rule 11?

DEFENSE COUNSEL: Yes, your Honor.

THE COURT: Thank you. Let the record reflect the Court is satisfied that Mr. Andrew W. Grossman has been informed of his constitutional rights, that he understands the nature of the charges, the effect of a plea, and the maximum penalty which may be imposed.

The Court further finds that Mr. Grossman's plea will be made knowingly, intelligently, and voluntarily.

Tr. 39-40.

{¶ 12} Grossman proceeded to withdraw his former pleas and pleaded guilty to amended Counts 1, 8, and 9, and the trial court referred Grossman for a presentence investigation and report ("PSI"). On August 22, 2023, the State filed a sentencing memorandum.

{¶ 13} On September 11, 2023, the trial court conducted a sentencing hearing. Initially, Grossman's newly hired defense counsel requested a continuance so that he could obtain additional discovery, including children and family services' records and Grossman's medical records to potentially use for mitigation purposes. Defense counsel also stated Grossman did not understand at the plea hearing that he would be subject to a mandatory sentence, yet defense counsel stated, "I don't think it's in [Grossman's] best interest to withdraw the plea. I really don't." Tr. 67. The trial court denied the motion to continue sentencing; provided defense counsel additional time that day to speak with Grossman; and conducted the sentencing hearing. Victim statements were made by A.G., J.A., and J.A.'s parents, and counsel spoke on behalf of their clients.

{¶ 14} The trial court considered the record, the PSI, written statements, and oral statements presented at the sentencing hearing. The trial court sentenced Grossman to three years each on amended Counts 1 and 9 and seven years on amended Count 8, with an additional three and one-half years under the Reagan Tokes Law. Counts 1 and 8 were sentenced concurrently and Count 9 was to run consecutive to the other sentences for an aggregate sentence of 10 to 13 and one-half years. Grossman was informed that he would be subject to five years of mandatory postrelease control upon his release from prison.

{¶ 15} On October 6, 2023, Grossman filed a timely notice of appeal that raises one assignment of error: "The trial court abused its discretion by accepting the appellant's guilty pleas without establishing for the record that the appellant[ ] subjectively entered the pleas knowingly, intelligently, and voluntarily."

{¶ 16} On January 20, 2024, Grossman passed away. On February 5, 2024, pursuant to defense counsel's filing of a notice of suggestion of death for Grossman, this court sua sponte dismissed the appeal as moot. On the same date, the State filed a joint motion for reconsideration of the dismissal and for substitution of a party pursuant to App.R. 29(A). On February 16, 2024, this court granted the State's joint motion and reinstated Grossman's appeal. On April 25, 2024, this court, sua sponte, requested the parties brief the merits of the State's motion for reconsideration and motion to substitute counsel of record as the party defendant, and both parties submitted briefs in response.

**Legal Analysis**

{¶ 17} Initially, we address the State's motion for substitution of a party. The Ohio Supreme Court detailed when the appeal of a deceased criminal defendant may continue:

> When a criminal defendant-appellant dies while his appeal is pending and no personal representative is, within a reasonable time, subsequently appointed, the state may suggest the decedent's death on the record and, upon motion by the state for substitution of a party, the court of appeals should substitute any proper person, including the decedent's attorney of record, as party defendant-appellant and proceed to determine the appeal. Absent such a motion for substitution of a party, filed within a reasonable time by the state, the court of appeals may dismiss the appeal as moot, vacate the original judgment of conviction and dismiss all related criminal proceedings, including the original indictment. (App. R. 29[A], construed and applied.)

*State v. McGettrick*, 31 Ohio St.3d 138, 139 (1987), paragraph two of the syllabus; *see Hackett & Arnold, Inc. v. Notash*, 1990 Ohio App. LEXIS 1308, *4-6 (8th Dist. Mar. 29, 1990); *compare with State v. Cupp*, 2018-Ohio-5211 (Case dismissed upon death of appellant where no App.R. 29(A) motion was filed to substitute a representative party for the deceased.). In conjunction with *McGettrick*, this appeal will proceed despite the death of Grossman because this court granted the State's timely motion to substitute Grossman's counsel of record as the party defendant pursuant to App.R. 29(A).

{¶ 18} On appeal, Grossman argues that the trial court failed to comply with Crim.R. 11 when it accepted his guilty pleas that were not provided knowingly, intelligently, and voluntarily. Specifically, Grossman contends that the trial court asked if any medications impacted his ability to understand the proceedings but did

not receive a definitive answer. Grossman further contends that he was unaware of several sentencing issues prior to the sentencing hearing. Grossman argues that the trial court explained the nature of his mandatory sentence on Count 8 but did not ask him if he subjectively understood the explanation. Grossman further argues that the trial court's failure to read the elements of the offenses and to explain the meaning of allied offenses and merger prevented him from knowingly, intelligently, and voluntarily entering guilty pleas.

{¶ 19} "The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty." *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). A trial court's compliance with Crim.R. 11 when it accepted an offender's plea is reviewed under a de novo standard. *State v. Cardwell*, 2009-Ohio-6827, ¶ 26 (8th Dist.), citing *State v. Stewart*, 51 Ohio St.2d 86 (1977).

{¶ 20} Crim.R. 11 reads, in pertinent part:

(C)(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the

court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a)-(c).

{¶ 21} The applicable standard when determining whether a defendant's plea was made understandingly and voluntarily in compliance with Crim.R. 11(C) is no longer one of strict or substantial compliance. *Dangler*, 2020-Ohio-2765. Instead, the Ohio Supreme Court identified these questions to be asked when reviewing a trial court's Crim.R. 11(C) plea colloquy:

(1) has the trial court complied with the relevant provision of the rule? (2) if the trial court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.* at ¶ 17.

{¶ 22} There are two exceptions when a defendant is entitled to have his or her plea vacated without first showing prejudice by the trial court's failure to comply with Crim.R. 11(C). *Id.* at ¶ 16. The first exception occurs when "a trial court fails to explain the constitutional rights [set forth in Crim.R. 11(C)(2)(c)] that a defendant waives by pleading guilty or no contest[.]" *Id.* at ¶ 14. Under such circumstances, it is presumed that the defendant entered a plea involuntarily and unknowingly, and

no showing of prejudice to the defendant is required. The second exception occurs if there is a complete failure by the trial court to comply with the nonconstitutional aspects of the plea colloquy. *Id.* at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22. When a trial court completely fails to comply with Crim.R. 11(C)(2)(a) or (C)(2)(b), the defendant need not show prejudice. *Id.*

{¶ 23} Neither of these exceptions apply in the instant case. Therefore, to invalidate his plea, Grossman must establish (1) the trial court did not fully comply with Crim.R. 11(C), and (2) Grossman was prejudiced by the failure to fully comply. *Dangler* at ¶ 14, citing *State v. Veney*, 2008-Ohio-5200, ¶ 17. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 24} Initially, Grossman claims that because he did not respond directly to the trial court's question about whether his medications had an adverse impact on his understanding of the proceedings, the trial court needed to inquire further. Our review of the record reveals that upon Grossman's statement that he did not know if any medications would impact his understanding of the proceedings, the trial court established that Grossman understood the nature of the proceedings as well as any conversations he had with his attorney. These inquiries sufficiently negated any conclusion that medications adversely affected Grossman's ability to enter a plea.

{¶ 25} Grossman contends his "hesitancy" to the trial court's inquiries showed his pleas were not knowingly, intelligently, and voluntarily entered:

THE COURT: Do you understand what is going on today?

THE DEFENDANT: I guess, yeah.

. . .

THE COURT: Do you, in fact, understand what is happening today?

THE DEFENDANT: Yes, I think so.

. . .

THE COURT: Are you satisfied with the services of your lawyer?

THE DEFENDANT: Yeah, I suppose.

Tr. 26. Despite the fact that Grossman did not provide a "yes" or "no" response to several questions, his answers demonstrated he understood the nature of the proceedings.

{¶ 26} Several times throughout the plea hearing, Grossman informed the trial court that he understood his rights following the court's explanation, which was the first time he was advised on the issues. Contrary to Grossman's current assertions, these responses show the trial court explained the Crim.R. 11 rights in a manner that was understood by Grossman and support the conclusion that Grossman entered his pleas knowingly, intelligently, and voluntarily.

{¶ 27} Grossman argues the failure of the trial court to read the elements of the charged offenses, the correlating code sections, and the definitions of allied offenses and merger resulted in Grossman not understanding the nature of the charges as required under Crim.R. 11(2)(a). A detailed instruction explaining the elements of the charge is not mandated under the rule, but rather a trial court must

provide an apprisement of the "nature of the charges." *State vs. Key*, 1982 Ohio App. LEXIS 15397, *8 (8th Dist. Mar. 25, 1982). To determine whether a defendant understood the charges against him, the trial court "'must decide whether defendant's counsel, or someone else, provided defendant with information or notice of the charges. To do so, we look at all the particular facts and circumstances surrounding the case.'" *State v. Philpott*, 2000 Ohio App. LEXIS 5849, *8 (8th Dist. Dec. 14, 2000), quoting *State v. Carter*, 60 Ohio St.2d 34, 38 (1979).

{¶ 28} The trial court began the plea hearing with a recitation of the charges cited in the indictment, the associated code sections, the level of offense, and any related specifications. The assistant prosecuting attorney then recited the plea agreement, including the names of the charged offenses, and stated Grossman's agreement to plead to non-allied offenses. The trial court asked defense counsel if the provided information was what he expected and if defense counsel had advised Grossman of his rights to which defense counsel answered affirmatively. Grossman does not contend on appeal that he did not understand any specific portion of the charges but argues that the trial court should have made sufficient inquiries to ensure he subjectively understood the nature of the charges including the definition of allied offenses and merger. At no point during the plea colloquy did Grossman indicate he did not understand the nature of the charges against him. The record demonstrates Grossman understood the nature of the charges.

{¶ 29} Grossman also argues that the trial court advised him that amended Count 8 carried a mandatory two-year sentence but the court did not ask Grossman

if he subjectively understood he would be subject to a mandatory sentence. Grossman cites to *State v. Beard*, 2019-Ohio-4178 (2d Dist.), and *State v. Corbin*, 2001-Ohio-4140 (8th Dist.), in support of his position. We find *Beard* and *Corbin* distinguishable from the instant facts.

{¶ 30} In *Beard*, during the trial court's Crim.R. 11 plea colloquy, the defendant stated she did not understand the possible maximum penalty for the charged offense. The trial court did not respond to the defendant's inquiry but proceeded to advise her on postrelease control. On appeal, the *Beard* Court found the trial court did not attempt to dispel the defendant's possible confusion or further explain the potential maximum sentence she faced and, accordingly, found the defendant entered a plea without understanding the maximum penalty involved.

{¶ 31} In *Corbin*, both the assistant prosecuting attorney and the trial court incorrectly informed the defendant that the maximum prison time associated with his charged offense was 3-10 years rather than one, two, three, four, or five years. Because the defendant did not fully understand the consequences of his plea, the *Corbin* Court found the plea invalid.

{¶ 32} Unlike in *Beard* and *Corbin*, the trial court here explained to Grossman that the potential sentence on Count 8 was 2-to-18 years plus an indefinite Reagan Tokes term. Tr. 32. The trial court erroneously stated Grossman could be subject to probation but immediately rescinded that statement when the assistant prosecuting attorney informed the court that Count 8 required a prison term. The trial court told Grossman that Count 8 carried a mandatory sentence

without any chance for parole. Tr. 39-40. After Grossman indicated he did not understand the mandatory sentence of Count 8, defense counsel informed the trial court that he had explained to Grossman, prior to the plea hearing, that he would be subject to a mandatory two-year sentence. Based upon defense counsel's comments, the trial court did not pursue further questioning of Grossman nor provide additional advisements on this issue. We find that the record showed Grossman's understanding of the mandatory sentence.

{¶ 33} Further, assuming arguendo that the trial court's plea colloquy did not comply with Crim.R. 11(C) for any of the reasons purported by Grossman, Grossman's arguments still must fail. Per the *Dangler* criminal-plea analysis, Grossman must show he was prejudiced by the trial court's failure to fully comply with its Crim.R. 11 advisements before his plea may be vacated. "Prejudice must be established "'on the face of the record.'"" *Dangler*, 2020-Ohio-2765, at ¶ 24, quoting *Hayward v. Summa Health Sys./Akron City Hosp.*, 2014-Ohio-1913, ¶ 26, quoting *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462 (1999).

{¶ 34} There is nothing within the record that indicates Grossman would not have entered his plea if the trial court completely complied with its Crim.R. 11 advisements. If all a defendant needed to claim to establish prejudice was the argument that the trial court did not fully advise him during the plea hearing,

> the prejudice requirement would all but be eliminated to the point where it was essentially nonexistent. *See Dangler* at ¶ 24 (rejecting appellant's claim that appellant demonstrated prejudice based solely on the fact that he was challenging his plea on appeal as that would "be tantamount to eliminating the prejudice requirement altogether"). The

> prejudice requirement is there for a reason; to effectuate a return to the "traditional rule" requiring a defendant to establish prejudicial error before the defendant's conviction may be reversed on appeal. *Id.* at ¶ 13.

*State v. Gabbard*, 2021-Ohio-3646, ¶ 19 (12th Dist.). Grossman presented no arguments whatsoever regarding prejudice, and therefore, Grossman has not proven prejudice necessary to vacate his guilty pleas. *See State v. Fisher*, 2021-Ohio-1592, ¶ 16 (8th Dist.) (no prejudice demonstrated where Fisher offered no arguments on the issue).

{¶ 35} Under the circumstances of this case, the trial court's advisements complied with Crim.R. 11(C)(2) and, even if the advisements did not fully comply, Grossman did not demonstrate prejudice by the alleged partial compliance. Thus, Grossman entered his guilty pleas knowingly, intelligently, and voluntarily and, accordingly, we overrule Grossman's sole assignment of error.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR