[Cite as *State v. Penington*, 2024-Ohio-5483.]

# ACOURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                         No. 113726

    v.                            :

D'ANGELO PENNINGTON, JR.,               :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 21, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-22-674502-A and CR-22-674830-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ben McNair, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} In this delayed appeal, defendant-appellant, D'Angelo Pennington, Jr., appeals from the trial court's judgment entries of conviction following guilty pleas in two separate cases. For the reasons that follow, we affirm his convictions.

## I. Procedural Background

{¶ 2} In September 2022, the State named Pennington in a ten-count indictment filed under Cuyahoga C.P. No. CR-22-674502-A, charging him with aggravated murder (Count 1), murder (Counts 2 and 3), felonious assault (Counts 4 and 5), discharge of a firearm on or near prohibited premises (Count 6), involuntary manslaughter (Count 7), having weapons while under disability (Counts 8 and 9), and use of a firearm by a violent career criminal (Count 10). Counts 1 through 9 carried both one- and three-year firearm specifications; Counts 2 through 5 and 7 carried repeat violent offender specifications ("RVO"); and Counts 4 through 7 carried notices of prior conviction. The charges stemmed from the 2020 shooting death of Bryan Bradford.

{¶ 3} In September 2022, the State named Pennington, along with his codefendant, in a four-count indictment filed under Cuyahoga C.P. No. CR-22-674830-A, charging him with one count each of having weapons while under disability (Count 2), carrying a concealed weapon (Count 3), and improper handling of a firearm in a motor vehicle (Count 4).[1] Each count contained a forfeiture specification.

{¶ 4} Following discovery in each case, Pennington entered into a plea agreement with the State. Regarding Case No. CR-674502, Pennington agreed to plead guilty to Count 7, involuntary manslaughter, along with the attendant

---

[1] Count 1 pertained to his codefendant.

specifications, and Count 10, use of a firearm by a violent career criminal. In exchange, the State agreed to nolle the remaining counts.

{¶ 5} Regarding Case No. CR-674830, Pennington agreed to plead guilty to Count 3, carrying a concealed weapon. In exchange, the State agreed to nolle Counts 2 and 4. Pennington also agreed to forfeit the firearm seized during his arrest.

{¶ 6} During the plea hearing, the trial court noted that it told Pennington's defense counsel that she would terminate his probation on his prior cases (Cuyahoga C.P. No. CR-19-647081 and Cuyahoga C.P. No. CR-18-626325) and run his sentence in CR-674830 concurrent to his sentence in CR-674502, which would be "an aggregate range of 15 to 23 years in prison, plus Reagan Tokes time." (Tr. 6). The trial court also stated that it would waive court costs and give Pennington credit for the time he had served. The prosecutor acknowledged and agreed with the trial court's statements.

{¶ 7} The trial court then explained the Reagan Tokes Law and how the sentences under the law are calculated. The court stated:

> It adds a tail to whatever sentence I give to you on the involuntary manslaughter count. So, for example, that count carries with it three to 11 years in the penitentiary. If I sentenced you to six years on that count, for example, half of that time would be the tail. So the sentence would be six to nine years in the penitentiary, because half of six is three, and the tail would be that three years.

(Tr. 8.) The trial court further explained the rebuttable presumption of release. Both the State and defense agreed with the recitation.

**{¶ 8}** The parties then discussed that the offenses of involuntary manslaughter and use of a firearm by a violent career criminal would not merge and that to get to the agreed sentencing range, the court would necessarily impose consecutive sentences. The court clarified with the parties:

> So without imposing or enacting the RVO, the repeat violent offender specification, within the range that you have agreed to, 15 to 23 years, plus Reagan Tokes time, that 15 to 23, the RVO does not need to come into play here for the Court to reach that range.

(Tr. 11.) The trial court engaged in the requisite Crim.R. 11 colloquy with Pennington, advising him of the Crim.R. 11 rights he would be waiving by pleading guilty and advising him of the maximum penalties for each offense, including that involuntary manslaughter is a felony of the first degree, punishable by three to 11 years, and that

> it carries with it the Reagan Tokes statute that we've talked about previously.
>
> Whatever sentence I give to you on the base count, on that count, half of that is a tail.
>
> And so, for example, if I sentenced you to six years on that count, half of that would be three. Your sentence would be six years to nine years. That includes the Reagan Tokes statute. That's half of the sentence that I give to you, if that's what I was going to do on that count.

(Tr. 19-21.) Pennington stated that he understood. Thereafter, he pleaded guilty in Case No. CR-674502 to Count 7, involuntary manslaughter, along with the attendant one- and three-year firearm specifications, notice of prior conviction specification, and RVO specification, and Count 10, use of a firearm by a violent career criminal.

He also pleaded guilty in Case No. CR-674830, to Count 3, carrying a concealed weapon, and agreed to the forfeiture of the firearm.

{¶ 9} The trial court proceeded directly to sentencing, where the court viewed video evidence of the shooting and considered statements from the prosecutor, the victim's family, defense counsel, and Pennington. In CR-674502, the trial court imposed a three-year sentence on the firearm specification to be served prior to and consecutively to an indefinite prison term of 10 to 15 years on Count 7, involuntary manslaughter, and consecutively to a seven-year sentence on Count 10, for a minimum prison term of 20 years and a maximum term of 25 years. In CR-674830, the court imposed an 18-month prison term on Count 3, carrying concealed weapons, and ordered that sentence to be served concurrent with the sentence in CR-674502. Pennington's total aggregate sentence is 20 to 25 years in prison.

{¶ 10} Pennington now appeals, raising as his sole assignment of error that the parties erred in agreeing to an unlawful sentencing range and the trial court erred in imposing it. Specifically, he contends that because his sentence extends beyond the agreed sentencing range of 15 to 23 years, his sentence is unlawful. He claims that the trial court was required to advise him of the actual Reagan Toke's tail to satisfy its obligation of advising him of the maximum penalty involved when entering his plea pursuant to Crim.R. 11(C)(2)(a). According to Pennington, he could not agree to a sentencing range that did not give him the actual possible maximum sentence he could receive.

{¶ 11} At the outset, the State contends that Pennington's sentence is not reviewable because it involved a jointly recommended and imposed sentence. R.C. 2953.08(D)(1) provides that a sentence is not reviewable "if the sentence is authorized by law, has been jointly recommended by the defendant and the prosecution in the case, and is imposed by the sentencing judge." We recognize that the trial court imposed a sentence within the recommended-agreed range, but we will address the assignment of error because the trial court did not fully comply with Crim.R. 11 when advising Pennington during his plea of the maximum indefinite sentence on the involuntary manslaughter offense.

{¶ 12} Prior to accepting a guilty plea, a trial court is required to address the defendant and ascertain that he is entering a knowing, intelligent, and voluntary plea. *State v. Dangler*, 2020-Ohio-2765, ¶ 11. Crim.R. 11(C)(2)(a) requires the trial court to "determine that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." When reviewing the validity of a guilty plea, the Supreme Court of Ohio directs us to ask the following questions:

> (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.

{¶ 13} Contrary to Pennington's claim that the trial court was required to advise him of the actual Reagan Toke's tail to satisfy its obligation of advising him

of the complete maximum penalty involved, "Crim.R. 11(C) does not require the trial court 'to advise a defendant of the cumulative total of all prison terms for all the offenses at the time of the guilty plea.'" *State v. Gooden*, 2021-Ohio-1192, ¶ 20 (8th Dist.), quoting *State v. Wojtowicz*, 2017-Ohio-1359, ¶ 12 (8th Dist.). The trial court advised Pennington of the minimum and maximum prison term for each count to which he would be pleading guilty. In this regard, the trial court complied with Crim.R. 11.

{¶ 14} Regarding the qualifying felony for which a Reagan Tokes tail would apply, the trial court informed Pennington of the maximum sentence for involuntary manslaughter and explained how the Reagan Tokes indefinite sentence would be calculated but it did not explicitly state the maximum indefinite sentence that could be imposed. This court has found that a trial court's explanation of how the Reagan Tokes indefinite sentence would be calculated along with informing the defendant of the maximum indefinite sentence that could be imposed complied with Crim.R. 11(C)(2)(a). *State v. Vitumukiza*, 2022-Ohio-1170, ¶ 16, 19 (8th Dist.).

{¶ 15} In this case, however, the trial court only informed Pennington of how the indefinite sentence would be calculated, not the maximum sentence that could be imposed after the application of Reagan Tokes. As such, it did not fully comply with Crim.R. 11(C)(2)(a) and therefore we must examine whether Pennington established that he suffered prejudice. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Dangler*, 2020-Ohio-2765, at ¶ 16.

{¶ 16} At the plea hearing, Pennington agreed to a sentencing "range of 15 to 23 years, plus Reagan Tokes time." He stated multiple times that he understood the trial court's explanation of how the indefinite sentence would be calculated and had no questions regarding the plea, the sentencing range, or the imposition of Reagan Tokes time. And Pennington's counsel agreed with the trial court's recitation of the plea, the sentencing range, and the trial court's explanation of the Reagan Tokes calculation. Thus, the record does not demonstrate any confusion regarding Pennington's understanding of the plea or the agreed sentencing range.

{¶ 17} Admittedly, the better practice would be to add the Reagan Tokes time to the maximum sentence when setting forth a sentencing range. Nevertheless, the record is clear that the parties, including Pennington, knew and agreed that the trial court would impose a base sentencing range of 15 to 23 years plus whatever the Reagan Tokes tail would be after the court determined the base sentence on the involuntary manslaughter offense. Accordingly, we do not find that the parties agreed to an unlawful sentence nor did the trial court impose an unlawful sentence. Moreover, Pennington has failed to argue, let alone demonstrate, how he was prejudiced by any purported vague advisement to successfully challenge the knowing aspect of his plea. The assignment of error is overruled.

{¶ 18} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR