[Cite as *State v. Shropshire*, 2025-Ohio-881.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2024-02-012<br>CA2024-02-013 |
| - vs - | : | |
| | : | O P I N I O N<br>3/17/2025 |
| CHARLES A. SHROPSHIRE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023 CR 00560

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

Roger W. Kirk, for appellant.


**HENDRICKSON, J.**

{¶ 1} Appellant, Charles A. Shropshire, appeals his convictions in the Clermont County Court of Common Pleas following his no contest plea to three counts of pandering sexually-oriented matter involving a minor and two counts of rape. Because the trial court failed to advise appellant of his constitutional right to compulsory process during the plea

proceedings, we find his plea was not knowing and intelligent. We therefore vacate his convictions and remand the case for further proceedings.

**FACTS & PROCEDURAL HISTORY**

{¶ 2} On October 6, 2022, appellant was indicted in Case No. 2022 CR 00915 on eight counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1), felonies of the second degree; nine counts of the illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1), felonies of the second degree; one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree; one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), a felony of the third degree; two counts of endangering children in violation of R.C. 2919.22(B)(5), felonies of the second degree; one count of rape in violation of R.C. 2907.(A)(1)(b), a felony of the first degree; and two counts of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree. The charges related to photographs and videos taken or stored by appellant of minors engaged in sexual acts as well as allegations that appellant engaged in sexual activity and sexual conduct with C.W. when she was 12 and 13 years old.

{¶ 3} Appellant was subsequently indicted in Case No. 2023 CR 00560 on 13 counts of pandering in sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1), felonies of the second degree. Each count was accompanied by an R.C. 2941.1417(A) specification seeking forfeiture of the Galaxy S20 cell phone on which the offending videos were stored.

{¶ 4} The two cases were consolidated by the trial court. Appellant initially pled not guilty to the charges. A jury was assembled, and trial was set to begin on January 29, 2024. However, at that time, appellant and the state reached a plea agreement. Appellant

agreed to plead no contest to two counts of rape in violation of R.C. 2907.02(A)(2) and one count of pandering in sexually-oriented matter involving a minor in Case No. 2022 CR 00915 and to plead no contest to two counts of pandering in sexually-oriented matter involving a minor, including the accompanying forfeiture specifications, in Case No. 2023 CR 00560. In exchange for entering no contest pleas to those five offenses, the state agreed to dismiss the remaining charges and recommend an agreed sentence of 22 years as a Reagan Tokes minimum. A completed and signed plea form containing all of the required Crim.R. 11 advisements was presented to the trial court.

{¶ 5} The trial court engaged appellant in a Crim.R. 11(C) plea colloquy. It informed appellant of the nature of the charges, the maximum penalty involved for each pandering and rape offense, including the potential maximum prison sentence under the Reagan Tokes indefinite sentencing scheme, and the mandatory nature of the rape sentences. The court further advised appellant of postrelease control and the basic sex offender classification and registration requirements he would be subject to by virtue of his pleas.

{¶ 6} The trial court then explained the difference between a guilty plea and a no contest plea before proceeding to advise appellant of the constitutional rights he would be waiving by entering a plea. The court advised appellant that he had a right to a jury trial, but by pleading no contest, a trial would not occur. The court further explained that at a trial, 12 jurors would have to unanimously find him guilty in order for him to be convicted and that if he did not want a jury trial, he could elect to have a bench trial. The court informed appellant that he had the right to have the state prove his guilt beyond a reasonable doubt, the right to confront and cross-examine all of the state's witnesses, the

right to not testify at trial, and the right to not have his silence used against him. Notably, the court did not advise appellant of his right to compulsory process of witnesses.

{¶ 7}   Appellant indicated he understood the trial court's advisements. Appellant further stated he had gone over the case and all of the evidence with his counsel, that counsel had answered all of his questions, and that he was, "for the most part," satisfied with his counsel's representation. Appellant then entered his no contest plea to the two rape charges and the three pandering charges. The state recited the underlying facts related to those charges, explaining that appellant had forcibly raped the 13-year-old victim twice between March 1, 2022 and May 1, 2022 by means of vaginal intercourse. As for the pandering charges, appellant had reproduced a photograph of a fully nude prepubescent female being vaginally penetrated by an adult man's penis, a video of a pubescent female being forcefully raped and choked by a man, and a video of a pubescent female being vaginally penetrated by a German Shepherd. Appellant indicated he did not have any dispute with the recited facts.

{¶ 8}   The trial court accepted appellant's no contest pleas and found him guilty of the pandering and rape offenses. As the plea contained an agreed recommendation as to the sentence, the court proceeded immediately to sentencing. After hearing from defense counsel, appellant, the state, and a victim advocate, the court imposed the jointly recommended sentence. Appellant was sentenced to an aggregate minimum term of 22 years in prison to an indefinite maximum of 27.5 years in prison.

**ANALYSIS**

{¶ 9}   Appellant appealed, raising the following as his sole assignment of error:

{¶ 10} THE TRIAL COURT ERRED BY ACCEPTING [APPELLANT'S] NO CONTEST PLEA WHEN IT FAILED TO ADVISE HIM OF THE CONSTITUTIONAL RIGHT

TO COMPULSORY PROCESS, AS REQUIRED BY CRIM.R. 11, RENDERING HIS PLEA INVOLUNTARY, UNKNOWINGLY, AND UNINTELLIGENTLY GIVEN.

{¶ 11} Appellant argues his no contest pleas to the rape and pandering charges were not knowingly and intelligently entered as the trial court failed to advise him of his constitutional right to compulsory process during the Crim.R. 11(C) plea colloquy. Relying on the Ohio Supreme Court's decision in *State v. Dangler*, 2020-Ohio-2765, appellant maintains that he does not need to show prejudice to have his plea invalidated.

{¶ 12} The state acknowledges that the trial court "did not specifically inform [appellant] that he had a right to compulsory process" but argues that appellant's plea was nonetheless knowing and intelligent because appellant "knew he had the right to subpoena witnesses . . . since he had already exercised that right." Relying on statements made at a July 25, 2023 change of counsel hearing, wherein appellant indicated he was requesting new counsel because his appointed counsel, "had not subpoena[ed] the only witness that I may have in my case," as well as the fact that defense counsel had issued a subpoena for appellant's witness to appear at trial, the state contends appellant already knew and had exercised his right to compulsory process at the time he entered his no contest pleas. Under these circumstances, the state argues appellant's no contest pleas were knowingly and intelligently entered and should not be vacated.

{¶ 13} "A criminal defendant's choice to enter a plea of guilty or no contest is a serious decision." *State v. Clark*, 2008-Ohio-3748, ¶ 25. To that end, "[b]ecause a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter [such] a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10. "'Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'"

*State v. Veney*, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).

{¶ 14} Crim.R. 11(C) governs the process a trial court must follow to ensure that a guilty plea or no contest plea to a felony charge is knowing, intelligent, and voluntary. *State v. Hawkins*, 2023-Ohio-2915, ¶ 7 (12th Dist.). It provides, in relevant part, as follows:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2).

{¶ 15} The Supreme Court addressed a trial court's compliance with Crim.R. 11(C) and how an appellate court should review a trial court's plea colloquy in *State v. Dangler*, 2020-Ohio-2765. The Court held that, in general, "a defendant is not entitled to have his

plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16. "However, there are two exceptions to this rule: (1) when the trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest and (2) 'a trial court's complete failure to comply with a portion of Crim.R. 11(C).'" *Hawkins* at ¶ 9, quoting *Dangler* at ¶ 15. Under either of those circumstances, the defendant is not required to show prejudice. *Dangler* at ¶ 14-16. With respect to the first exception, the Supreme Court stated, "[w]hen a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, *we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required*." (Emphasis added.) *Id.* at ¶ 14. This is consistent with the Supreme Court's earlier holding in *Veney*, 2008-Ohio-5200, ¶ 29, wherein the court stated the following:

> [T]he trial court must orally inform the defendant of the rights set forth in Crim.R. 11(C)(2)(c) during the plea colloquy for the plea to be valid. Although the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey these rights to the defendant. . . . When the record confirms that the trial court failed to perform this duty, the defendant's plea is constitutionally infirm, making it presumptively invalid.

{¶ 16} In the present case, it is undisputed that the trial court plainly failed to orally inform appellant of his constitutional right to compulsory process of witnesses during the plea colloquy. The trial court's failure to comply with Crim.R. 11(C)(2)(c) renders appellant's no contest pleas invalid. Appellant need not demonstrate prejudice under these circumstances. *See Dangler* at ¶ 14.

{¶ 17} In reaching this conclusion we reject the state's argument that the no contest pleas were valid because appellant had already demonstrated knowledge about

his right to compulsory process during the July 25, 2023 change of counsel hearing and had exercised the right by subpoenaing a witness to appear at trial. The Supreme Court has made it clear that the trial court was required to orally inform appellant of his right to compulsory process during the Crim.R. 11 plea colloquy before he could validly waive his constitutional rights and enter a knowing and intelligent plea. The position taken by the state is in direct conflict with the holding of *Dangler*. The state essentially argues that appellant cannot demonstrate prejudice as he already knew of his right to compulsory process. However, "no showing of prejudice is required" when a trial court fails to explain during the plea colloquy a constitutional right that a defendant waives by pleading no contest or guilty. *Dangler* at ¶ 14.[1]

**CONCLUSION**

{¶ 18} Though we may not like the result of our application of *Dangler* in the present case, we are bound to follow Ohio Supreme Court precedent. We find that the trial court's failure to advise appellant of his constitutional right to compulsory process during the plea colloquy renders his plea invalid. *Accord State v. Johnson*, 2023-Ohio-4309 (8th Dist.) (finding a guilty plea invalid for the trial court's failure to advise the defendant during the plea colloquy of his right to have his guilt proven beyond a reasonable doubt at a trial, despite the fact that the plea was entered on day two of a jury trial and the defendant had heard the reasonable-doubt standard explained to the jury by the trial court and had heard both the state and defense counsel discuss the standard during voir dire and opening statements). As the trial court failed to explain one of the

---

1. The state recognized in its appellate brief that it could not find any Ohio caselaw to support its position. Instead, the state relied on caselaw from Virginia and Utah. *See Allen v. Commonwealth*, 27 Va.App. 726 (1998); *State v. Visser*, 22 P.2d 1242, 1243 (Utah 2000). We are not persuaded by these opinions. Rather, we find we are obligated to follow the precedent set forth by the Ohio Supreme Court in *State v. Dangler*, 2020-Ohio-2765.

constitutional rights set forth in Crim.R. 11(C)(2)(c), no showing of prejudice is required. Appellant's sole assignment of error is, therefore, sustained.

{¶ 19} Appellant's no contest pleas are vacated, the judgment of the trial court is reversed, and the matter is remanded to the trial court for further proceedings. The state may proceed with prosecution on the indicted charges.

BYRNE, P.J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 20} If the record clearly demonstrates a defendant had knowledge of a particular constitutional right prior to the Crim.R. 11 plea colloquy, and the court fails to inform the defendant of that particular right, is the plea automatically invalid as a matter of law? My colleagues hold "yes," as do other courts, relying on *Dangler.* However, a closer read of *Dangler* is required to avoid its distortion. If there is a failure to inform a defendant of a constitutional right *Dangler* only permits the court to "presume" a prejudice which can be contradicted by the actual facts. Therefore, I respectfully dissent from an overly restrictive interpretation of *Dangler.*

{¶ 21} *Dangler* involved a nonconstitutional provision in Crim.R. 11 but did briefly address the failure to explain a constitutional right. When there is a failure to explain a constitutional right that otherwise goes by the wayside due to a plea, "we ***presume*** that the plea was entered involuntarily, and unknowingly, and no showing of prejudice is required." *Id*. at ¶14 (Emphasis and boldface added.). But what happens if the presumption is clearly demonstrated by the record to be factually inaccurate, or in

legalese, successfully rebutted by the actual facts? The state cogently suggests prejudice must then be demonstrated by the defendant. I agree.

{¶ 22} When examining the Crim.R. 11 plea colloquy the questions to answer are simple:

> (1) Has the trial court complied with the relevant provision of the rule?
>
> (2) If the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice?
>
> (3) If a showing of prejudice is required, has the defendant met that burden?

*State v. Dangler,* 2020-Ohio- 2765, ¶ 17.

{¶ 23} A trial court can fail in compliance with the rule but the failure is not automatically a type that alleviates the defendant's burden to demonstrate prejudice. In failing to explain the right to subpoena witnesses, the first question in *Dangler* is answered in the negative. The court did not comply fully with advising Shropshire of all his constitutional rights. However, is the failure a type that excuses a defendant from showing prejudice?

{¶ 24} The failure to address a constitutional provision permits us to presume prejudice, creating an exception to the general requirement of a need for Shropshire to show prejudice. But the facts (as demonstrated by the record) can overcome what we might ordinarily presume. Shropshire's burden of showing prejudice is not negated purely by an operation of law but rather is driven by the actual facts.

{¶ 25} Shropshire had a trial date for serious, multiple sex offenses. Exercising his right to compulsory process he had his attorney subpoena a witness for the trial. While a

jury waited to be seated, he decided to enter a plea. Shopshire had in fact already exercised his right to compulsory process. Why?

{¶ 26} Well in advance of the trial date, Shropshire demonstrated his knowledge of compulsory process by openly chastising his attorney for not (at that time) having already subpoenaed the witness he wanted subpoenaed. It was at his insistence and direction that the witness was subpoenaed. Once the witness appeared for trial, Shropshire determined it was in his best interest to plea.

{¶ 27} An accused who asks for and receives an attorney cannot later argue in good faith that he wasn't told he could have an attorney. Similarly, Shropshire who exercised (prior to trial) his right to compulsory process cannot credibly argue he didn't know about the use of subpoenas to require witnesses to appear. The disingenuity borders on absurdity.

{¶ 28} A trial court cannot rely upon a written explanation and waiver of rights alone. Such a document does not supplant a Crim.R. 11 colloquy. But Shropshire signed a Written Plea of No Contest acknowledging his plea of no contest and among other items that he was giving up ". . . the power of the court to call witnesses for me." Such a document signed by Shropshire and filed with the court must be considered as it demonstrated Shropshire's knowledge and understanding prior to his plea.[2] Pandora's box becomes an endless source of chaos for legal proceedings if documents signed and filed in open court have no significance whatsoever, particularly when combined with circumstances that reveal the truth of the proceedings.

---

2. A written waiver can be considered presumptively voluntary, knowing, and intelligent. *State v. Foust,* 2004-Ohio-7006 ¶ 52 (discussing a jury waiver). Moreover, evidence of a written waiver form signed by the accused constitutes strong proof of a valid waiver. *State v. Earl*, 2024-Ohio-5682 (4th Dist.), citing *State v. Clark*, 38 Ohio St. 252, 261 (1988).

{¶ 29} Appellate courts must carefully examine the facts to prevent a mockery of justice. *Dangler* did not apply a strict liability type standard that slams the door if a colloquy fails to discuss a constitutional right while at the same time the defendant entered a plea informed and knowing of the right. Shropshire's sex offenses involved minors and were horrendous; several charges were dropped and he pled to two rape charges and three pandering charges, agreeing to a sentence of 22 years in prison. "The test for prejudice is whether the plea would have otherwise been made." *Dangler* at ¶ 16. It's no wonder Shropshire invites an analysis that evades his need to establish prejudice—the answer is obvious.

{¶ 30} The purpose of Crim.R. 11 is to ensure a defendant has knowledge of a right and voluntarily decides not to exercise those rights while simultaneously assessing whether it is to his benefit to enter a plea. Here the facts clearly demonstrated on the record that Shropshire had knowledge of the right, exercised the right, and assessed that his plea was in his interest. Shropshire's actual knowledge and implementation of the right made the failure to mention it harmless. It is for this reason that I must dissent.