[Cite as *State v. Pope*, 2026-Ohio-619.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

ERNEST POPE,

    DEFENDANT-APPELLANT.

CASE NO. 9-25-23

OPINION AND
JUDGMENT ENTRY

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 24-CR-348

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: February 23, 2026

APPEARANCES:

    *William T. Cramer* for Appellant

    *Allison M. Kesler* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Ernest Pope ("Pope"), brings this appeal from the July 2, 2025 judgment of the Marion County Common Pleas Court sentencing him to prison after he pled no contest to, and was convicted of, Possession of Cocaine. On appeal, Pope argues that his counsel was ineffective, that his no contest plea was not knowing, intelligent, and voluntary, and that the trial court failed to notify him of a mandatory term of postrelease control at the sentencing hearing. For the reasons that follow, we affirm in part, and reverse in part.

*Background*

{¶2} On September 30, 2024, Pope was a backseat passenger in a blue Ford Fusion that was stopped for a traffic violation. During the traffic stop, while a law enforcement officer was speaking with the driver of the Ford, Pope was politely asked to keep his hand out of his pockets because he was observed handling something in his pockets or near his waist-line. Pope told the officer he was only handling marijuana and money. Despite being asked to stop handling things and keep his hands visible, Pope persisted reaching into his pockets, the second time through a "cross-draw" fashion that the officer thought was similar to how someone might draw a firearm.

{¶3} The two officers present at the scene drew their firearms and repeated commands for Pope to stop moving and place his hands on the interior roof of the

vehicle.[1] Pope did not put his hands on the interior roof of the vehicle and he continued to fidget around his waist. While they issued commands to Pope, the officers switched from holding firearms to holding tasers. When Pope continued to fail to comply with orders, Pope was removed from the vehicle and taken to the ground. A subsequent search of his person uncovered approximately 53 grams of cocaine in Pope's pant-leg, and a "nitrile" glove that an officer indicated was often used when handling narcotics.

{¶4} On October 2, 2024, Pope was charged with Possession of Cocaine in violation of R.C. 2925.11(A), a first degree felony. Pope pled not guilty and counsel was appointed for him.

{¶5} On March 3, 2025, Pope's attorney filed a suppression motion arguing that the traffic stop was unlawful.[2] A suppression hearing was held on April 17, 2025. At the hearing, the officer conducting the traffic stop testified and his body camera footage was entered into evidence. The officer did not have dash camera footage because he was a K9 handler and his patrol vehicle did not have a dash camera. The officer provided clear testimony regarding the events in question and the testimony was corroborated by the body camera video.

---

[1] There were no issues with the driver of the vehicle or the front-seat passenger.
[2] On October 22, 2024, Pope sent a letter to the trial court stating that the attorney who had been appointed to represent him had represented him before. Pope stated that although the attorney had secured an acquittal for him at trial in the prior case, Pope had, *inter alia*, communication issues with the attorney. Pope's letter indicated he was "considering invoking [his] 6th Amendment rights to represent [him]self." (Doc. No. 12). Further, although Pope was represented, on January 17, 2025, Pope filed a pro se "Motion to Suppress" claiming that the traffic stop was unlawful, and that there was no probable cause to arrest him.

{¶6} On April 24, 2025, the trial court filed an entry denying Pope's suppression motion.

{¶7} After his suppression motion was denied, on May 30, 2025, Pope entered into a written, negotiated plea agreement wherein he agreed to plead no contest to the charge as indicted and the parties would argue at sentencing. A Crim.R. 11 hearing was held wherein it was determined that Pope was entering a knowing, intelligent, and voluntary plea. A pre-sentence investigation was ordered and sentencing was set for a later date.

{¶8} On July 1, 2025, Pope was sentenced to serve a mandatory, indefinite prison term of 9 years to a maximum of 13.5 years. A judgment entry memorializing the sentence was filed July 2, 2025. It is from this judgment that Pope appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**Appellant's constitutional rights to the effective assistance of counsel were violated when defense counsel failed to consult with appellant about the suppression issue and made a futile argument about the validity of the alleged turn-signal violation rather than challenge the credibility of the officer who claimed to see the violation.**

**Second Assignment of Error**

**Appellant's no contest plea was not entered knowingly, intelligently, or voluntarily because defense counsel did not discuss the plea with appellant and appellant did not understand that prison was mandatory.**

**Third Assignment of Error**

**The trial court erred by failing to impose postrelease control during the sentencing hearing.**

*First Assignment of Error*

{¶9} In his first assignment of error, Pope argues that his trial counsel was ineffective for failing to challenge the officer's credibility regarding the reasoning for the traffic stop in this case in a suppression motion.

*Relevant Authority*

{¶10} The appellant has the burden of proving he was denied the right to the effective assistance of counsel because a properly licensed attorney is presumed to carry out his or her duties in a competent manner. *State v. Cartlidge*, 2020-Ohio-3615, ¶ 39 (3d Dist.). To establish ineffective assistance of counsel, the appellant "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Tench*, 2018-Ohio-5205, ¶ 264. "Reversal of a conviction or sentence based upon ineffective assistance of counsel requires satisfying this two-pronged test, and the failure to make either showing is fatal to the claim." *State v. Radabaugh*, 2024-Ohio-5640, ¶ 51 (3d Dist.), citing *State v. Conway*, 2006-Ohio-791, ¶ 165.

{¶11} Generally, the failure to file a suppression motion on any given issue does not constitute per se ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448. "To sustain a claim of ineffective assistance of counsel based on counsel's failure to file a particular motion, the defendant must first specify the basis for the motion that counsel supposedly should have filed. *State v. Thompson*, 2021-Ohio-2979, ¶ 14 (3d Dist.). Next, the defendant must show that the motion had a reasonable probability of success. *Id*. Otherwise, counsel is presumed to have been effective. *Id*.

Analysis

{¶12} Officer Ryan Kelly of the Marion City Police Department testified at the suppression hearing regarding his training, education, and experience. Officer Kelly had approximately 13 years of experience in law enforcement and he testified that he had conducted hundreds, if not thousands of traffic stops in the past. Officer Kelly testified that he was a K9 officer, and that he drove an SUV that was specifically designed for the K9 unit. The vehicle did not have a dash camera.

{¶13} Officer Kelly testified that he was on patrol in the city of Marion on September 30, 2024, when he observed a blue Ford Fusion fail to activate its turn signal more than 100 feet prior to turning. "More specifically, Officer Kelly observed the vehicle come to a complete and legal stop at a stop sign" and *then* activate a turn signal to turn onto a different street. (Doc. No. 48). Officer Kelly

testified he believed the driver of the vehicle had violated R.C. 4511.39(A)[3], so he initiated a traffic stop. The trial court specifically found Officer Kelly's testimony credible. (*Id.*)

{¶14} It is well-settled that, "[a] police officer's testimony alone is sufficient to establish reasonable articulable suspicion for a stop." *State v. McClellan*, 2010-Ohio-314, ¶ 38 (3d Dist.). Here, Officer Kelly's testimony provided a lawful reason to stop the blue Ford Fusion based on a reasonable suspicion that the driver had violated R.C. 4511.39(A). The trial court found Officer Kelly credible, making the stop lawful.

{¶15} Defense counsel filed a suppression motion in this case challenging the legality of the traffic stop; however, Pope argues that the suppression motion should have more specifically challenged the credibility of Officer Kelly, particularly since there was no dash camera footage of the alleged violation. Pope argues the officer was lying about observing a turn signal violation, and that if defense counsel would have thoroughly challenged the officer's credibility, his suppression motion would have been successful.

{¶16} Pope's argument fails for multiple reasons. First, Officer Kelly's credibility related to the reasoning for the traffic stop was put at issue simply by challenging the legality of the traffic stop. In fact, the trial court specifically

---

[3] Revised Code 4511.39(A) reads, in pertinent part, "When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle[.]"

considered Officer Kelly's credibility and found him to be credible in his testimony. Second, although Pope argues that Officer Kelly was being untruthful, we have no actual evidence of Officer Kelly lying in the record that would support this position.

{¶17} Simply put, Pope is unable to establish either prong of ineffective assistance of counsel. We have no indication that trial counsel's performance was deficient, but even if we did, there is absolutely no evidence in the record to establish that a different, or more expansive, suppression motion would have been successful. Therefore, Pope's first assignment of error is overruled.

*Second Assignment of Error*

{¶18} In his second assignment of error, Pope argues that his no contest plea was not entered knowingly, intelligently, and voluntarily.

Relevant Authority

{¶19} Since a no contest plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary. *State v. Dangler*, 2020-Ohio-2765, ¶ 10. If the plea was not knowing, intelligent, and voluntary, the enforcement of the plea is unconstitutional. *Id*. Generally, a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Dangler* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

Criminal Rule 11(C) reads as follows:

C) Pleas of guilty and no contest in felony cases.

* * *

(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Analysis

{¶20} Pope contends on appeal that although he expressed a desire at the change-of-plea hearing to enter a no contest plea, he expressed hesitancy at times during the hearing. He contends that his hesitancy establishes that his plea was not knowing, intelligent, and voluntary. Notably, however, Pope does not argue that the

trial court specifically failed to apprise him of anything required under Crim.R. 11(C).

**{¶21}** Pope first argues that he expressed some discomfort with his plea during the following exchange.

> THE COURT: Have you had enough time to discuss this plea with your attorney?
>
> THE DEFENDANT: Well no, but I trust him.
>
> THE COURT: Do you need more time?
>
> THE DEFENDANT: No – (Inaudible) – I'm just ready to get it over with.
>
> THE COURT: Okay. Well, I don't want you to rush into any decision here. This is a big decision that you're making. So, if you need more time, we can give you more time. It may not happen today, you may have to wait until Monday. But if you need more time to speak with him, we can give you more time to do that.
>
> THE DEFENDANT: No, it will be okay.
>
> THE COURT: Okay.
>
> THE DEFENDANT: I don't want to cause no inconvenience.
>
> THE COURT: Again, I don't want you to do something out of inconvenience to anyone else. This is your life. This is a big case. So I don't want you to rush into anything. So I want to make sure you're a hundred percent positive that you want to go through with this today.
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Did [your attorney] explain to you your constitutional rights, the nature of this charge, and the consequences of your plea?

THE DEFENDANT: Yes, he just went over it with me.

THE COURT: And are you satisfied with the advice that [your attorney] has provided for you.

THE DEFENDANT: Yes.

(May 30, 2025, Tr. at 7-8).

**{¶22}** The preceding dialogue establishes that although Pope had some initial reservations, he wished to proceed with his plea. The trial court repeatedly told Pope that he did not have to enter a plea that day. Nevertheless, Pope decided to proceed with his plea. There is no indication from the dialogue that Pope did not understand that he did not have to enter a plea that day or that he could have more time if he wished. Pope indicated he was "a hundred percent positive" that he wanted to go through with the plea. We do not find that this segment establishes that Pope's plea was anything other than knowing, voluntary, and intelligent.

**{¶23}** Pope next argues that the transcript shows that he was unaware that he would not be eligible for judicial release or early release.

THE COURT: Do you understand that because your prison term is mandatory, you're generally not eligible for judicial release and other early release programs?

THE DEFENDANT: No, I didn't know that.

THE COURT: Okay. Does that change anything you want to do here today?

THE DEFENDANT: No. So basically what's mandatory? How much time is mandatory?

THE COURT: Whatever time you're sentenced to.

THE DEFENDANT: Oh it would all be mandatory?

THE COURT: Yes.

THE DEFENDANT: What I'm sentenced to?

THE COURT: Yes.

[DEFENSE COUNSEL]: (This is mumbling.) [sic] It's an F1, it's 3 to 11 years, any number you get is mandatory time. . . .

THE DEFENDANT: Okay. I understand now.

THE COURT: Does that change anything you want to do here today?

THE DEFENDANT: No.

(Tr. at 9-10).

{¶24} The dialogue indicates that to any extent Pope initially misunderstood the nature of his sentence, he was properly advised and still elected to proceed with his plea. Moreover, the written plea agreement in this case, which was signed by Pope, specifically indicated that his prison term was mandatory. There is no indication from the record that Pope failed to understand the nature of his sentence when he entered his plea.

{¶25} Based on the record before us, we do not find that Pope has established that his plea was anything other than knowing, intelligent, and voluntary. Therefore, his second assignment of error is overruled.

*Third Assignment of Error*

{¶26} In his third assignment of error, Pope argues that the trial court failed to properly advise him of a mandatory term of postrelease control at the sentencing hearing. He contends that although the trial court's final judgment entry imposed post-release control, the trial court did not address postrelease control at sentencing, requiring reversal.

{¶27} The State counters by arguing that although postrelease control was not mentioned at the sentencing hearing, Pope was properly notified at the earlier *plea* hearing. Contrary to the State's argument, the Supreme Court of Ohio has explicitly held, "The trial court must advise the offender at the *sentencing* hearing of the term of supervision, whether postrelease control is discretionary or mandatory, and the consequences of violating postrelease control." (Emphasis added.) *State v. Bates*, 2022-Ohio-475, ¶ 11. Since the trial court failed to advise Pope of the requirements of postrelease control at the sentencing hearing, we are compelled to reverse specifically so the notification can be provided. *See State v. Thomas*, 2026-Ohio-20, ¶ 56 (6th Dist.). Accordingly, Pope's third assignment of error is sustained.

*Conclusion*

{¶28} We have found no prejudicial error in Pope's first or second assignments of error, therefore they are overruled. However, Pope's third

assignment of error is sustained and this cause is remanded for the limited purpose of addressing postrelease control.

**_Judgment Affirmed in part, Reversed in part, Cause Remanded_**

**ZIMMERMAN, P.J. and MILLER, J., concur.**

Case No. 9-25-23

# **<u>JUDGMENT ENTRY</u>**

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellant and Appellee for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge


_____
Mark C. Miller, Judge

DATED:
/jlm